IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

REGINALD A. ROBERTS         :      CIVIL ACTION
                                   :
     v.                         :      NO. 09-4895
                                   :
RISA VETRI FERMAN, et al        :

**MEMORANDUM OF LAW SUPPORTING THE PLAINTIFF'S SECOND
MOTION FOR PARTIAL SUMMARY JUDGEMENT**

I.      INTRODUCTION

      Before the Court is an action against several Defendants; one of which is Montgomery County. Plaintiff seeks relief under several theories, one of which is a denial of valid or adequate due process in the denial of property. The property is the employment and state provided Heart and Lung Act benefits. Plaintiff now moves the Court for summary judgment on the due process claim, and asserts that there is no genuine dispute over a material fact and as a matter of law the Plaintiff is entitled to judgment on his Section 1983 deprivation of a 14th amendment right.

II.     STATEMENT OF UNDISPUTED FACTS

      1.      Reginald A. Roberts (hereafter Plaintiff) on March 15, 1999 through August 8 2008 was a law enforcement officer in Montgomery County and acted as a County Detective. Exhibit 1, 9, and 11(All Exhibits with a number indicated are the Exhibits used in the Plaintiff's First Motion for Partial Summary Judgment). See Plaintiff's First Motion for Partial Summary Judgment. These Exhibits are adopted here from the record, as are all others referenced below unless specifically referenced with a new exhibit number. See Exhibit A (Affidavit of Reginald A. Roberts; hereafter R.A. Robert).

2.      Plaintiff on or about January 22, 2007 through 2008 reported a severe hazardous working condition at the "NET" (Narcotic Enforcement Team) work site. Id. Plaintiff then made a claim for Heart and Lung benefits with the Montgomery County Human Resources Officer, Toni Luter, and Administrator of Benefits, while also providing a notice of claim packet to Chief of County Detectives Oscar P. Vance, Montgomery County District Attorney's Office. Id. Exhibit B, and 2, 11 and 12.

3.      Plaintiff's claim for Heart and Lung benefits was based on a belief he contracted an occupational disease (Acute Bronchitis and Tuberculosis) from mold growing in the office he worked in, and thus he contracted the disease in the performance of his duties as a county detective. Id. Exhibit 3 and 10.

4.      The County of Montgomery admits R.A. Roberts (Plaintiff) is entitled to Heart and Lung benefits. See Document #22 page 2 of the Memorandum in Response to Plaintiff's First Motion for Partial Summary Judgments, paragraph 3, where the County admits that Plaintiff Reginald A. Roberts is entitled to Heart and Lung benefits, saying: "Defendant does not dispute that Plaintiff is entitled to Heart and Lung benefits . . .". Defendant's admission is incorporated here, from the Record, and as though fully repeated; it is marked Exhibit C.

5.      Under Pennsylvania law, 53 C.S. § 637 et seq. (the Heart and Lung Act) a county law enforcement officer is entitled as of right to wage loss and medical care expenses, when the wage loss and/or medical care expense is for an injury that arises in the performance of the county law enforcement officer's duties. See. Exhibit A and 4 (statutory law).

6.       Heart and Lung benefits were not paid by the County of Montgomery to the Plaintiff on the 2007/2008 Heart and Lung claim. See Document #22. Defendant County's

Memorandum in Response to Plaintiff's First Motion for Partial Summary Judgments, admitting this fact. See also Exhibits A, 5, 9, 11, and 12.

7.     Plaintiff demanded a hearing for the benefits. See Exhibit A. However, he was not provided a hearing, nor paid the Heart and Lung benefits. Id. Also see Plaintiff's Complaint, ¶¶ 13 and 14. See Amended complaint ¶¶ 16-18.[1] See Defendants' Answer ¶¶15-18.

8.     Plaintiff was terminated from his employment with the County of Montgomery on August 8, 2008. The Employer's termination notice did not assert any basis for the termination. Exhibit 1, 6, 9, 10, and 11. Further, there was no pre-termination hearing where Plaintiff was advised he would or might be terminated and afforded an opportunity to speak on the termination or planned termination. See Exhibit "A".

9.     When the Plaintiff was terminated he was a member of a union and covered under a Collective Bargaining Agreement. Exhibits 7, 8, and 9.

10.     The Collective Bargaining Agreement, Section  provides at 18 and (g) the following: Heart and Lung Act. (g).  It is agreed between the parties that Detectives qualify as law enforcement officers under the Heart and Lung Act of Pennsylvania. . . . in the event of a temporary disability as a result of an on-duty occurrence or event, Detectives shall be entitled to full rate of pay, without deduction, . . .".

11.     Under part 18 of the CBA, Grievances and Arbitration Procedure, the CBA provides that, "A grievance shall be defined as any dispute involving the application or interpretation of the Agreement or in matters of discipline (emphasis added) . . . .". Id. & Exhibits 7 and 8. Also see the 2004-2006 and 2007-2009 Bargaining Agreements.

---

[1] Plaintiff still has an outstanding motion to amend the complaint to correct typos. Plaintiff continues to move to amend the complaint to correct the typos.

12.     Plaintiff requested Arbitration for his termination; however, the County of Montgomery "declined" to participate in arbitration. Exhibits A, 10, 11, and 12.

13.     Plaintiff has moved in court to compel the County of Montgomery to provide a hearing through a CBA arbitration on County's decision and action that has deprived the Plaintiff of property (his wages and employment, and the state entitled Heart and Lung benefits). See Document # 21.

14.     The County of Montgomery has through the court filing system opposed the relief Plaintiff seeks, which is to compel a hearing for lost property (employment, wages and state provided benefits). See Exhibit A & Document # 22.

15.     Pennsylvania Law provides that Heart and Lung benefits are a protected property interest. *Gwinn v. Pennsylvania State Police*, 668 A.2d 611  (Pa.Cmwlth.,1995).

16.     Federal law provided that public employment covered by a CBA or statute has a protected property interest that requires valid due process before and after being deprived. See *Loudermill, Infra.*

17.     Defendants Risa Vetri Ferman, Oscar P. Vance Jr., Samuel Gallen, Stephen Forzato, and County of Montgomery[2]intentionally denied Plaintiff property without valid due process or the process due the Plaintiff was entitled by law. Exhibit A

18.     Plaintiff has exhausted available state remedies for a post due process deprivation by seeking arbitration under the CBA, being denied that, and seeking court action to force the post deprivation due process (arbitration) which effort the County of Montgomery opposes. Exhibit A.

---

[2] The individual defendants, Risa Vetri Ferman,  Oscar P. Vance Jr., Samuel Gallen, Stephen Forzato, , were sued individually. Risa Vetri Ferman is a policy maker, so her conduct holds the County liable.

19.     Continuing any other available state relief would be fruitless and a meaningless act for the Plaintiff, because the County would just oppose that effort to obtain post deprivation review and a post deprivation hearing process. Exhibit A.

20.     The County and individual Defendants wish to "settle" with the Plaintiff, but only the Heart and Lung claim. the Defendants are, however, resorting to extortion to force Plaintiff to settle. They are demanding Plaintiff accept their terms for payment of the undisputed entitlement part of the Heart and Lung benefits; rather than just pay the undisputed benefit part and then to litigate in a hearing process (local agency hearing or Arbitration) the remaining disputed issues. Such as, the start and end for the claim, the entire value of the claim, and his termination. See Document 22 and Exhibits A & D (settlement agreement).

21.     Plaintiff is unwilling to give up rights and benefits, and he is unwilling to settle under the terms the Defendants demand. See Document # 22 and Exhibit A.

23.     The Defendants continue to deny Plaintiff a hearing process for the Heart and Lung benefits and termination; albeit, they admit Plaintiff is entitled to the Heart and Lung benefits and have not paid to the Plaintiff those benefits they admit he is entitled. That is unless he settles on their terms. Exhibit A.

24.     An employer, such as Montgomery County, under Pennsylvania Workers Compensation Law, which law parallels the Heart and Lung Act, must pay benefits to a claimant when there is no dispute the claimant is entitled to the benefit. *City of Philadelphia v. W.C.A.B. (Ford-Tilghman)* --- A.2d ----, 2010 WL 935787 Pa.Cmwlth.,2010. Holding that a Claimant may receive benefits under the Heart and Lung Act and the Pennsylvania Workers' Compensation Act (WCA), Workers' Compensation Act, Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §§ 1-1041.4, 2501-2708 Further holding, per 53 P.S. § 637, that the unambiguous language of the

Heart and Lung Act clearly contemplates the ability of an injured employee to seek workers' compensation and benefits under the Heart and Lung Act simultaneously. City of Erie v. Workers' Compensation Appeal Board (Annunziata), 575 Pa. 594, 838 A.2d 598 (2003). Although the Heart and Lung Act and the WCA are similar in purpose, the two acts operate separately from one another. Wisniewski v. Workmen's Compensation Appeal Board (City of Pittsburgh), 621 A.2d 1111 (Pa.Cmwlth.1993). The Heart and Lung Act was intended to cover only those disabilities where the injured employee is expected to recover and return to his or her position in the foreseeable future. City of Pittsburgh v. Workers' Compensation Appeal Board (Wiefling), 790 A.2d 1062, 1066 (Pa.Cmwlth.2001). Neither the Heart and Lung Act, nor the WCA prevents employers from initiating proceedings under the WCA before, after, or simultaneous with proceedings under the Heart and Lung Act. See e.g., Polk Ctr/Dep't of Public Welfare v. Workmen's Compensation Appeal Board (Pochran), 682 A.2d 889 (Pa.Cmwlth.1996)(addressing Act 534, Act of December 8, 1959, P.L. 1718, as amended, 61 P.S. §§ 951-952, but noting the Heart and Lung Act and Act 534 are very similar in purpose and construction and the analysis of one may be applied to the other).

The language of the Heart and Lung Act does not estop an injured employee from seeking workers' compensation, only from retaining monies collected pursuant to an NCP or an award while Heart and Lung Act benefits are being paid. Annunziata, 575 Pa. at 605, 838 A.2d at 604. The Court recognized that in circumstances where the employer is self-insured, it would be futile to require an employer pay workers' compensation benefits to the claimant and then require the claimant to turn around and remit them back to the employer. Id., 575 Pa. at 605, 838 A.2d at 605, fn. 7. To avoid this event, the Court recognized it would be proper for the employer to issue an NCP and refuse to pay benefits. Id.

III.    STANDARD

Federal Rule of Civil Procedure 56(c) permits summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party bears the initial burden of illustrating for the court the absence of a genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 159-61 (1970). The moving party can satisfy this burden by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 323-25.

Once the moving party has made a proper summary judgment motion, the burden switches to the nonmoving party. The nonmoving party "may not rest upon the mere allegations or denials of [his] pleading," Fed. R. Civ. P. 56(e) and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Rather, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial'"(Id. at 587 quoting Fed. R. Civ. P. 56(e) - emphasis in original). However, "the mere existence of some evidence in support of the non-moving party will not be sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-moving party on the issue." *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1308 (3d Cir. 1995); see also *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249-50 (1986) ("If the

evidence is merely colorable ... or is not significantly probative . . . summary judgment may be granted."). "[T]he [Plaintiff] must identify evidence of record sufficient to establish every element essential to the claim." *Petrucelli*, 46 F.3d at 1308.

IV.   ARGUMENT

**Plaintiff Is Entitled To Judgment On The Due Process Claim**
**For the Denial of Heart And Lung Benefits and Hearing.**

From the Pleadings and attached Exhibits there is no genuine dispute of a material fact on the issue of whether the Plaintiff was deprived of property without valid pre or post deprivation due process. Plaintiff submits, as a matter of law he is entitled to summary judgment on the 14th Amendment claim for being denied Heart and Lung benefits and without valid due process of law, because when the benefit was deprived under law it was recognized that Plaintiff had a  protected property interest in the benefit.

In order to establish a violation of civil rights, a claim must be based on a right secured by the Constitution or laws of the United States. See 42 U.S.C. § 1983. "To make a prima facie case under § 1983, the plaintiff must demonstrate that a person acting under color of law deprived him of a federal right." Berg v. County of Allegheny, 219 F.3d 261, 268 (3d Cir.2000) (citing Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir.1995)). The Due Process Clause "raises no impenetrable barrier to the taking of a person's possessions." Fuentes v. Shevin, 407 U.S. 67, 81, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). What is unconstitutional, in this context, is a deprivation of property itself, and a deprivation of property without due process of law. Zinerman, 494 U.S. at 125, 110 S.Ct. 975. The essential requirements of the Due Process Clause are notice and an opportunity to be heard. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 545-548, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). The standard for determining what process is due in a given situation is rather flexible, since the due process inquiry eschews reliance on rigid

mandates in favor of an approach which accounts for the factual circumstances of the particular situation at issue. Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). In Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Supreme Court described the factors that must be considered as a part of this inquiry. The Supreme Court explained:

> More precisely, our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. Mathews, 424 U.S. at 334-35, 96 S.Ct. 893.

Where feasible, the Constitution usually requires a hearing before a state deprives a person of a constitutionally-protected property interest. Zinermon, 494 U.S. at 127, 110 S.Ct. 975. However, a due process claim based on a state actor's unauthorized deprivation of property is not actionable under § 1983 unless no adequate post-deprivation remedy is available. See Hudson v. Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)[3]. In circumstances where a deprivation is occasioned by an unauthorized, random act of a state employee, and not by an established state procedure, the Due Process Clause is satisfied by the availability of an adequate post deprivation remedy. Hudson v. Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). A state cannot be expected to do the impossible by employing pre-deprivation procedures prior to every unauthorized action taken by a state employee. Where a "deprivation" is caused by the random action of a state employee, "the state's action is not complete until and unless it provides or refuses to provide a suitable post-deprivation remedy."

---

[3] The defendants do not argue and have not presented evidence that the deprivation of the Plaintiff's property right in the employment or Heart and Lung benefits was "unauthorized".

Id. The appropriate level of process required by the Fourteenth Amendment in connection with a particular deprivation of property often depends upon whether the deprivation in question was authorized or unauthorized under the relevant state's established procedures.

In this case, the deprivations at issue were carried out by the policy making person, such as defendant Risa Ferman, and under established procedures she followed. Under these circumstances, it cannot be assumed then that the availability of post-deprivation relief would be sufficient to satisfy the Constitution. Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3d 877, 880 (2d Cir.1996) ("When the deprivation occurs in the more structured environment of established  procedures, rather than random acts, the availability of post-deprivation procedures will not, ipso facto, satisfy due process."). A meaningful opportunity to challenge a lien before its imposition, however, satisfies the Due Process Clause. Colondres v. Scoppetta, 290 F.Supp.2d 376, 383 (E.D.N.Y.2003).

Here, there was no lien placed on Plaintiff's Heart and Lung benefit. Rather, the benefits were wholly denied and without first being told why the benefits were being denied or being provided a hearing. Plaintiff was not even provided a post deprivation hearing; albeit, he made numerous demands to the Defendants (all of them) and other county officials, for a hearing.

The benefits when deprived were and remain property that is recognized as protected property, under the Fourteenth amendment. Property also belonging to the person entitled to the benefit. See,  *Gwinn v. Pennsylvania State Police*, 668 A.2d 611  (Pa.Cmwlth.,1995),

> The Heart and Lung Act provides police officers and firefighters with full compensation when they are temporarily disabled due to work-related  injuries. Adams  v.  Lawrence  Township  Board  of Supervisors, 621 A.2d 1119 (Pa.Cmwlth.), petition for allowance of appeal  denied,  536 Pa. 631, 637 A.2d 291 (1993). Heart and Lung Act benefits can be terminated when: (1) the claimant is able to return to work because his disability ceases; or (2) the claimant's disability  is  determined  to  be  permanent  as  opposed  to  only

10

temporary. Williams v. Department of Corrections, 164 Pa.Cmwlth. 224, 642 A.2d 608 (1994). We have established that an injured police officer receiving Heart and Lung Act benefits has a constitutionally protected property right in those benefits. Adams. Accordingly, they may not be terminated without conducting a full due process hearing in which the employer establishes one of the two bases of termination. Williams.

. . .

A review of the relevant case law reveals that we have previously addressed this issue, in a case involving a township police officer. Wydra v. Swatara Township, 136 Pa.Cmwlth. 164, 582 A.2d 710 (1990).

In Wydra, Swatara Township terminated Wydra's Heart and Lung Act benefits on the basis that his disability was permanent, without affording him a full due process hearing. Subsequently, however, the Civil Service Commission (CSC) conducted a termination hearing which comported with all the due process requirements of the Local Agency Law, and upheld the termination of Wydra's benefits. On appeal to this Court, we ordered the Township to reinstate Wydra's Heart and Lung Act benefits for the period of time between the date the Township had ceased paying benefits until the date of the CSC determination upholding termination subsequent to the due process hearing, finding that the benefits should have continued until that {sic} (and not the date on which the Township Board of Commissioners determined that his disability was permanent prior to the due process hearing).

Thus, the Heart and Lung benefits the Defendants admit Plaintiff is entitled to is property that enjoys 14th Amendment protection. Depriving Plaintiff of that property gives rise to a due process claim under Section 1983 when the deprivation of the property and the process due to the Plaintiff to obtain the property is denied by persons acting under color of state law.

The Defendants do not dispute the Plaintiff was and remains entitled to the benefits. See Document #22. Neither side disputes that Plaintiff was not paid the benefits, or that he demanded a hearing to obtain the payment of the entitled benefit. It is therefore undisputable that a pre and post deprivation of the Plaintiff's property has occurred. Equally undisputable is that the deprivation of the property was without a pre or post arbitration and/or a Local Agency Hearing.

Undisputable then is that the Plaintiff has established a due process claim under the 14th amendment.

As for the obligation pronged to seek available post deprivation, if that applies here, and it may not, that process must be available and adequate. Here, Plaintiff demanded a Local Agency Hearing, which is available as of right, but was denied to the Plaintiff by the defendants. Plaintiff demanded arbitration, which too was declined by the Defendants. Plaintiff brought suit to recover the deprived property, and hearing process. Plaintiff has moved to compel a hearing on the denied property and force the County into arbitration, for post deprivation relief. The County opposes the hearing process; albeit, the law allows for such and the hearing is also entitled by right under the CBA[4]. As such, it is undisputed on the record in this action that the

---

4 The County argues in opposition the following to Plaintiff's Motion to Compel Arbitration: Arbitration is not available to the Plaintiff because he elected to go to the Pennsylvania Human Relation Commission. Having done that, and because the CBA provides such an election to go outside removes the right to elect arbitration, the Court cannot compel the County to arbitrate the Plaintiff termination and denial of Heart and Lung benefits. See Document #22. The argument is frivolous and does not pass the laugh test.

The County applies a distorted reading or interpretation of the Collective Bargain Agreement and for a number of reasons is plainly incorrect. First,  The PHRC is given statutory authority to review employment discrimination. It is not statutorily authorized to review other types of labor issues, such as "good cause" under Act 111. It is not statutorily authorized or empowered to decided issues under a Collective Bargaining Agreement. Secondly, the County's anti discrimination policy manual specifically grants to all employees (including the plaintiff) the right to first go to an outside agency employee to have that agency review complaints of employment discrimination. See Exhibit "D". The CBA does not remove that right, nor does the Discrimination Policy reference the CBA right. Neither the CBA or County's discrimination policy states in clear and unequivocal language that the election under the policy right is a waiver of the CBA right. The same is true of the CBA. To waive a right requires clear, unequivocal, and unambiguous language. See, Pacemaker Yacht Co., a Div. of Mission Marine, Inc. v. N.L.R.B. 663 F.2d 455 (3rd Cir. 1981); "generally employees may, through the collective bargaining process, waive the right to engage in this protected activity. Mastro Plastics Corp. v. NLRB, 350 U.S. 270, 280, 76 S.Ct. 349, 356, 100 L.Ed. 309 (1956). We have cautioned, however, that such a waiver must be 'clear and unmistakable and that explicit language will not be read expansively.'" Delaware Coca-Cola Bottling Co. v. General Teamsters Local 326, 624 F.2d 1182, 1187-88 (3d Cir. 1980).   See also, Fralin v. County of Bucks 296 F.Supp.2d 609 (E.D.Pa.,2003); A discrimination claim based upon a statute, such as plaintiff's claim under the PHRA, is not subject to arbitration under a grievance procedure in a collective bargaining agreement unless plaintiff clearly and unmistakably waives her right to a judicial forum in the agreement."

Plaintiff has exhausted all post deprivation process that is available to him to remedy the deprivation and the denial of the due process hearing right. Equally, it appears on this record that Plaintiff had been deprived of property without valid or adequate pre or post due process. Further, Plaintiff was denied the process he is due under law; he has also exhausted what available post deprivation reviews there are available to him, and to continue the effort, to force a hearing, would be a meaningless act, because the Defendants would continue to oppose Plaintiff's effort to obtain the property and a hearing while continuing to deny the property while also admitting Plaintiff is entitled to the property.

If so, as it is, Plaintiff is entitled to summary judgment, because the undisputed facts established a deprivation of property protected under the 14th Amendment without affording the Plaintiff valid and adequate pre or post deprivation due process, by persons (the Defendants) acting under color of state law. Therefore, summary judgments should be entered for the Plaintiff and against defendants. A damage hearing should be scheduled after discovery is completed on the remaining claims.

---

Further see, Wright v. Universal Maritime Service Corp., 525 U.S. 70, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998), where the Supreme Court held that "a union employee's waiver of a statutory right to a judicial forum for an employment discrimination claim in a collective bargaining agreement must be 'clear and unmistakable'." Id. at 80, 119 S.Ct. 391.

Because the collective bargaining agreement at issue in Robert's case does not contain a specific waiver provision, the Court should conclude that the "very general" arbitration clause is not waived by an employee seeking a statutory right for agency and then judicial forum review of a charge for employment discrimination under the PHRA and Title VII (42 USC 2000e). Because the CBA does not provide a clear and unambiguous notice to Plaintiff that a waiver will occur to the right to arbitrate a denial of benefits and discipline, if one filed a discrimination charge with the PAHRC and/or EEOC, as the County suggests, the County's argument must be rejected. As such, and or the reasons stated, the County's argument lacks a scintilla of merit, is at best described as frivolous, and should be rejected by the Court.

**Plaintiff Is Entitled To Summary Judgment On The Due Process
Claim For the Denial of Property (Employment) Without a Valid
Pre and Post Deprivation Hearing Process.**

From the Pleadings and attached Exhibits there is no genuine dispute of a material fact on the issue of whether the Plaintiff was deprived of property without valid pre or post deprivation due process. Plaintiff submits, as a matter of law he is entitled to summary judgment on the 14th Amendment claim, against Defendants Risa V. Ferman, Stephen (Steve) Forzato, Oscar P. Vance JR., Samuel Gallen, and Montgomery County[5], for their depriving Plaintiff of his property (employment and benefits) without valid due process of law, viz Loudermill and post deprivation hearing process.

To have a property interest in a job, a person must have a legitimate entitlement to continued employment and not just a unilateral expectation of continued employment. Hill, 455 F.3d at 234. A legitimate entitlement to-and thus a property interest in-a government job is not created by the Constitution but rather by state law. Id.; see Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 539, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). A public employee who can be discharged only for cause has a protected property interest in continued employment. Loudermill, 470 U.S. at 539. A public employee who can be suspended only for just cause has a protected property interest in not being suspended without just cause. Dee v. Borough of Dunmore, 549 F.3d 225, 231 (3d Cir.2008).

In Loudermill, the Court determined "what pre-termination process must be accorded a public employee who can be discharged only for cause." 470 U.S. at 535. Prior to evaluating what process was due, the Court found that the Plaintiffs had a property right in continued employment because the applicable Ohio statute classified them as civil service employees

---

[5] R.V. Ferman is the policy maker for the DA office and thus binds the County by the decision to not grant benefits or pre/post hearings to the Plaintiff for lost benefits and the employment.

"entitled to retain their positions 'during good behavior and efficient service' who could not be dismissed 'except ... for misfeasance, malfeasance, or nonfeasance in office.' " Id. at 538-39 (quoting Ohio Rev.Code Ann §§ 124.11, 124.34).

Here, Plaintiff's employment is controlled by a Collective Bargaining Agreement. The Agreement provides that the Plaintiff could only be terminated for good cause. If terminated, the Plaintiff may file a grievance and seek arbitration. Whether there is good cause or not cannot be determined from the undisputed facts, however it can be determined from the undisputed facts whether the right to continued employment was denied; it was! After all, the Montgomery County (The employer) asserts in its Answer that there is a legitimate business affirmative defense. However, the Answer is devoid of facts to support the defense. A motion to dismiss that defense is pending for such reason. Then there is the Discharge Letter, which is found attached to Exhibit I. The letter simply was given to the Plaintiff when he was discharged and it too is devoid of facts to identify a legitimate business defense and/or good cause. There of course was no pre-termination hearing, meeting or process with the Plaintiff. The Defendants simply called him to the office, gave him the termination letter, and sent him to clean out his desk. Plaintiff thereafter, elected and invoked to arbitrate the termination; the Defendants, however, "declined" to participate in the post termination arbitration process. Plaintiff thereafter sued. In the suit, Plaintiff moved to compel the Defendants to arbitrate the termination. The Defendants oppose the motion or available post termination process.[6]

---

[6] It is worthy to note that Plaintiff applied for post termination review process though the unemployment compensation system. He prevailed. If there were a proper basis to fire the Plaintiff for some on or off duty conduct then the Plaintiff would not have received the benefits. The Defendants also would have asserted this basis in that post termination review process. Plaintiff would also not have been able to collect the state entitled benefit, because willful misconduct denies the right to the benefit under the Unemployment Compensation Law. This has been the law for seven decades and was the law when Plaintiff was discharged and obtained the unemployment benefits. See, McIntosh v. Unemployment Compensation Bd. of Review, 196 Pa.Super. 207, 173 A.2d 652 (Pa.Super 1961) citing Weimer

In <u>Rite Aid of Pennsylvania, Inc. v. United Food and Commercial Workers Union</u>, Local

1776, **---** F.3d ----, 2010 WL 521102 (C.A.3 (Pa.),2010) the Third Circuit discussed the general

principles a district court is to consider when examining an arbitration provision under a CBA.

The Circuit said:

> "arbitration is still a creature of contract and a court cannot call for
> arbitration of matters outside of the scope of the arbitration
> clause." *Rohm and Haas Co.*  522 F.3d at 332. Unless the parties
> clearly provide otherwise, the courts, not the arbitrators, are tasked
> with interpreting agreements in order to determine whether the
> parties have indeed agreed to arbitrate disputes whose arbitrability
> is contested. *See AT & T Techs.,* 475 U.S. at 649, 651, 106 S.Ct.
> 1415; *Local 827 v. Verizon New Jersey, Inc.,* 458 F.3d 305, 309
> (3d Cir.2006). In making that determination, a court is not to
> examine the potential merits of the claim sought to be arbitrated,
> except as we point out in Part IV, where the claim's merits and its
> arbitrability are inextricably intertwined. *See Lukens,* 989 F.2d at
> 672. Rather, the court is limited to the construction of the
> arbitration clause and any contractual provisions relevant to its
> scope, as well as any other "forceful evidence" suggesting that the
> parties intended to exclude the disputes at issue from arbitration.

Unemployment Compensation Case, 1954, 176 Pa.Super. 348, 107 A.2d 607 and holding that, willful
misconduct has been held to be a wanton or willful disregard of the employer's interest; a
disregard of the standards of behavior which the employer has the right to expect of his
employee; a breach of his duties and obligations to his employer and conduct clearly inimical to
the employer's best interest. It does not necessarily require actual intent to wrong the employer
'if there is a conscious indifference to the perpetration of a wrong, or a reckless disregard of the
employee's duty to his employer he can be discharged for 'willful misconduct' and will be
denied benefits.'. . . .  Dishonesty would certainly fall within these descriptions of willful
misconduct . . . ". See also <u>Elser v. Unemployment Compensation Bd. of Review,</u> 967 A.2d 1064
(Pa.Cmwlth.,2009)  Off duty conduct constitutes willful misconduct when the conduct make the
employee's ability to perform the work impossible.

Further, problematic about the suspicious misconduct legitimate or important
governmental reason, is on advice of counsel the County, Ferman and other defendants did not
appear at the UC hearing to support their objection to Plaintiff UC benefits. See Exhibit I. Doing
so is tantamount to insurance fraud a felony, because they would be agreeing to pay UC
insurance that under law is not entitled. It can be inferred from the decision "on advice of
counsel" that the Defendants could not lie about there being misconduct, for perjury is a felony
too, and they could jut not show, because there was no misconduct thus no felony payment of an
UC insurance claim. In any event, there is no evidence of an important governmental reason to
deny a hearing pre or post termination.

*See E.M. Diagnostic Sys., Inc. v. Local 169,* 812 F.2d 91, 95 (3d Cir.1987).

In <u>Nursing Home & Hosp. Union No. 434 AFL-CIO-LDIU by Mackson v. Sky Vue Terrace, Inc.</u>, 759 F.2d 1094 (3rd Cir. 1985) the Circuit affirmed the district court's order to compel the employer to arbitrate, "[b]ecause we find that the arbitration clause of the parties' agreement does cover the dispute in this case". Thus, Sky Vue was compelled "to arbitrate the union's grievances". Citing <u>United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83, 80 S.Ct. 1347, 1352-53, 4 L.Ed. 2d 1409 (1980)</u>. The Circuit also said:

> The law does not compel a party to submit a dispute to arbitration unless he has contractually agreed to do so. <u>Gateway Coal Co. v. United Mine Workers, 414 U.S. 368, 374, 94 S.Ct. 629, 635, 38 L.Ed.2d 583 (1974)</u>. Thus, the issue of arbitrability is "a matter to be determined by the courts on the basis of the contract entered into by the parties." <u>Atkinson v. Sinclair Refining Co., 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462 (1962)</u>; <u>Eberle Tanning Co. v. Section 63L, 682 F.2d 430, 433 (3d Cir.1982)</u>. Because of the strong federal policy in favor of arbitration, however, "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." <u>United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83, 80 S.Ct. 1347, 1352-53, 4 L.Ed.2d 1409 (1960)</u>; <u>H.C. Lawton, Jr., Inc. v. Truck Drivers, Chauffeurs and Helpers Local Union No. 384, 755 F.2d 324, 328 (3d Cir.1985)</u>.

Here, it is undisputed that Risa Ferman fired the Plaintiff and that Oscar P. Vance Jr., Samuel Gallen, and Stephen Forzato delivered the termination letter and did not provide either a pre-termination or post termination hearing. Also undisputed is the Plaintiff sought arbitration under the grievance system, or CBA and thus a hearing over his termination by Montgomery County. The request for a hearing was not processed by the County; meaning a hearing provided; although, the discipline is covered under the CBA; thus, the grievance is arbitrable. The only reason an arbitration was and has not occurred is because Risa Ferman, Oscar P. Vance Jr.,

Samuel Gallen, and Stephen Forzato, and Montgomery County "declines to participate". Thus, each Defendant is acting intentionally and/or in reckless disregard for or deliberate indifference to the Plaintiff property rights and to his due process rights not to have his property deprived without the process he is due under law. As held by <u>Loudermill</u>, the right to due process under law **<u>includes</u>** the right to a **<u>pre-deprivation</u>** hearing; where the deprivation is to terminate employment, <u>Loudermill</u> holds that a prompt post deprivation hearing is required and at that hearing the employer must present "some legitimate important governmental interest allow[ing] the pre-termination hearing process to be avoided. Of course here, no pre or post hearing has occurred; albeit Plaintiff has sought the post deprivation hearing. More importantly, The Employer (Montgomery County and the Defendants) have not ever shown a legitimate or "important" governmental interest.

The <u>Loudermill</u> Court also found in weighing the interests at stake, that depriving a person of his or her means of livelihood was severe. *Id.* at 543. The Court reasoned that giving an employee the opportunity to present his or her side of the case <u>prior to termination</u> was "of obvious value in reaching an accurate decision" on whether to dismiss an employee for cause. *Id.* The Court further found that the Plaintiffs each had plausible arguments that may have prevented their discharge. *Id.* at 544. The Court next determined that the governmental interest in immediate termination under the circumstances did not outweigh those private interests. *Id.* It reasoned that affording the employee an opportunity to respond prior to termination would not create a significant burden. *Loudermill,* 470 U.S. at 544. The Court further reasoned that a government employer also had an interest in avoiding disruption and erroneous decisions, continuing to receive the benefit of the trained employees' labors, and keeping citizens usefully employed rather than being placed erroneously on the welfare rolls. *Id.* The Court also stated that

in situations where the employer perceived a significant hazard in keeping the employee on the job, it could avoid the problem by suspending the employee with pay. *Id.* at 544-45. Thus, the Court held that prior to termination a "tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* at 545.

The Third Circuit has also addressed the issue before this Court. It first considered in *Dee*, *infra*., whether *Dee* had a protected property interest "in not being suspended without just cause." *Dee, 549 F.3d at 229*. The Court looked to the Pennsylvania Borough Code, which stated that " '[n]o person employed in any ... fire force of any borough shall be suspended, removed or reduced in rank except for one of six enumerated reasons.' " *Id.* (quoting 53 Pa. Stat. § 46190). It found that Dee, as an employee in a fire force of a borough, clearly had a property interest in not being suspended without just cause and was entitled to Fourteenth Amendment protection because the statute explicitly stated that it applies to those "suspended." *Id.* at 230.

The Court then went on to consider the level of process Dee was constitutionally due. *Id.* at 232. It first noted that having no form of pre-deprivation process considerably heightens the second Mathews factor-the risk of an erroneous deprivation. *Id.* "Only in 'extraordinary situations where some valid government interest is at stake' is it permissible to postpone the hearing until after the deprivation has already occurred." *Id.* at 233 (quoting *Bd. of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (internal quotation omitted)). The Court then remanded the case back to the District Court to determine whether it was an extraordinary situation as the defendants claimed because they feared for the safety of their citizens or whether, as the Plaintiff claimed, the defendants merely feared for their own public image. *Dee, 549 F.3d at 233*. The Court found that the District Court had not reached this issue,

nor had it sufficiently addressed Dee's property interest, and that these issues would greatly impact the *Mathews v. Eldridge* analysis. *Dee,* 549 F.3d at 233.

Here, the Defendants have as said not shown an "important governmental interest to deprive Plaintiff of the pre-termination process he is due under Loudermill. The Answer and the Defendant's Mandatory Disclosures evidence are void of a valid legitimate or important governmental interest for not providing Plaintiff with the Loudermill/Dee pre-termination hearing. As shown under footnote 5, the post termination unemployment compensation review process too is silent of any important governmental interest being shown. It was, under Loudermill the Defendants' burden to make this showing to avoid liability.

There is no evidence that the Plaintiff placed the public or anyone at risk either, so the was no necessity to forfeiture Plaintiff's Loudermill/Dee pre-termination hearing process. And, although the Defendants do intimate and are anticipated to argue the disclosure of the NET house's address would place officers at risk, which thus would be evidence of an important governmental interest to deprive the Plaintiff of the required Loudermill/Dee pre-termination hearing process, it remains that this basis cannot stand scrutiny.

The facts show that the each Defendant had an opportunity at Plaintiff's unemployment Compensation Hearing to present evidence of an important governmental interest, such as disclosing to others the super secret location of the County NET house. The Defendants did not present such evidence or even make the argument, and cannot because the location is widely known and even serviced by criminals on work release. Plaintiff submits the argument that Plaintiff put at risk the disclosure of the "NET House" and/or the "location is secrete, is unworthy of belief and specious for a number of reasons.

One reason is that the Defendants' claim of "risk" was not put forth in the Unemployment Compensation process. Another reason is, because inmates from the Montgomery County Correctional Facility (MCCF) know the location. See exhibit E.  In fact, the inmates worked on the NET building before Plaintiff "referenced" the NET address or took pictures of its inside. Id. These inmates were hired by the landlord administrator to fix the leaking building roof. The repairs were at the same time the Defendants were suggesting the location is secret. Id. The roof needed repair because it was allowing water to enter the building, into Plaintiff working area, and promoted the growth of mold. The mold was on walls and airborne. Id. The mold created a known hazardous work condition and it caused the Plaintiff's injury to his health. Id. (Inmate sent to fix rook memo and lab report) Also see Exhibit F, (office Assessment Report), G (Wahter Damage & Mold Evaluation report) and H (County/DA memo). Yet another reason is that the County in sending documents to the PHRC did not redact the address that appears in all the reports about the mold at the NET House. The same report was circulated outside the District Attorney's Office and the address not redacted.

And, even if the Defendants could overcome the pre-termination Loudermill/Dee hearing process violation, which they cannot, it remains undisputed that the Defendants also deprived and continue to deprive the Plaintiff of his post deprivation hearings process.

Plaintiff, as shown he exhausted what available and meaningful post deprivation process there is available to him. Plaintiff has invoked the arbitration process, which effort the Defendants blocked by declining to participate in. Plaintiff sought Unemployment Compensation benefits; The defendants opposed it, so he appealed and he prevailed. Plaintiff has sued. In the suit, Plaintiff moved to demand the Defendants arbitrate the termination. The Defendants oppose the relief. As such, the Fourteenth Amendment claim is made out and is ripe for determination.

Plaintiff submits, as a matter of law, he is entitled to judgment and an injunctive order that compels Montgomery County to participate in arbitration on the issues of Plaintiff's termination and denial of Heart and Lung benefits.

V.      CONCLUSION

For the undisputed facts, established law, and argument there-from, it is proper for the Court to grant Plaintiff summary judgment, and against Montgomery County, Risa Ferman,        , on the 14th Amendment deprivation of due process claims related to the denial of property (Heart and Lung benefits and employment).

Date May 7, 2010 Friday

                    ECF SIGNATURE          BMP3198  /s/
                                           Brian M. Puricelli
                                           Attorneys for Plaintiff

CERTIFICATE OF SERVICE

It is hereby certified that a true and correct copy of the foregoing document (Plaintiff's

Motion for Partial Summary Judgment) has this 7th day of May, Friday, 2010, been caused to

be filed electronically and is available for viewing and downloading on the ECF System:

Served with the document by ECF and United States Postal System was/were:

>           Joseph Santarone Jr., Esquire
>           Christopher Boyle, Esquire
>           cpboyle@mdweg.com
>           Attorneys for the Defendants
>           620 Freedom Business Center, Suite 300
>           King of Prussia, PA 19406

ECF SIGNATURE           BMP3198  /s/
                        **Brian M. Puricelli**
                        Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA


REGINALD A. ROBERTS                    :        CIVIL ACTION
                                       :
        v.                             :        NO. 09-4895
                                       :
RISA VETRI FERMAN, et al               :


**PLAINTIFF'S SECOND MOTION FOR
PARTIAL SUMMARY JUDGEMENT**


Plaintiff, by and though his counsel, moves the Court pursuant to Rule 56 for Partial

Summary Judgment against the County of Montgomery, on the 14th Amendment Count IV claim

concerning the denial of Heart and Lung benefits and employment, and says in support that, for

the facts provided in the Statement of Undisputed Facts, the supporting Exhibits and affidavit

provided, and Law cited, together with the argument made there-from in the accompanying

Memorandum of Law, that as a matter of law the Plaintiff is entitled to Partial Summary

Judgment on the 14th Amendment Count IV claim concerning the denial property and due

process of Heart and Lung benefits and continual employment.



                ECF SIGNATURE              BMP3198  /s/
                                           **Brian M. Puricelli**
                                           Attorneys for Plaintiff