# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Reginald A. Roberts<br>        Plaintiff<br><br>v.<br><br>Risa Vetri Ferman, et al.<br>        Defendants | CIVIL ACTION<br><br><br>NO. 09-4895 |

**L. Felipe Restrepo**                                                              October 7, 2010
**United States Magistrate Judge**

## MEMORANDUM AND ORDER

On October 23, 2009, Plaintiff Reginald A. Roberts filed the instant action against the County of Montgomery and a number of County employees alleging employment discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act, 43 P.S. § 951. Plaintiff also alleges violations of his federal civil rights pursuant to 42 U.S.C. § 1983. (Pl.'s First Am. Compl. 1.)

Presently before the Court is Plaintiff's First Motion for Partial Summary Judgment (Doc. No. 17), Defendant's Response in Opposition (Doc. No. 22), and Plaintiff's Reply (Doc. No. 38). As the parties have resolved Plaintiff's claim for Heart and Lung benefits, the Court will only address the issue of whether Defendants are required to arbitrate a dispute surrounding Plaintiff's dismissal from his position as County Detective. For the reasons set forth below, the Court now denies Plaintiff's motion.

# I. Standard of Review

A grant of summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

A "genuine issue" is one in which the evidence is such that a reasonable jury could possibly return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might impact the holding of the case under governing law. Anderson, 477 U.S. at 248.

When deciding a motion for summary judgment, a court must draw all reasonable inferences and view all facts in the light most favorable to the non-moving party. Id. at 255; Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005) (citations omitted). Accordingly, this Court may grant summary judgment if it determines that, after reviewing the evidence and making all inferences in favor of the non-moving party, there is no genuine issue of material fact to warrant a trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

# II. Background

Plaintiff Reginald Roberts began his employment as a County Detective in Montgomery County on March 15, 1999. (Pl.'s First Am. Compl. ¶ 7.) During his term of employment, Mr. Roberts was party to a collective bargaining agreement memorialized in the form of a "Memorandum of Understanding." (Pl.'s First Mot. Summ. J. Ex. 7,8; Defs.' Resp. Pl.'s Second Mot. Summ. J. (Doc. No. 36) Ex. A.) The Memorandum of Understanding contains a "Grievance and Arbitration Procedure", which provides detectives with an option for resolving

disputes, which involve discipline or the application of the agreement itself, through an entirely internal procedure. (Pl.'s Mot. Summ. J. Ex. 7,8 ¶ 18(a).) This procedure consists of essentially two steps:

> (1) Employee sends written statement of his/her grievance to the relevant Department Head. The Department Head will then meet with the grievant and other involved parties and issue a written decision within ten days of the meeting.
>
> (2) The employee may then appeal the decision of the Department Head to the District Attorney by way of a written statement. The Row Officer will subsequently meet with the grievant and other relevant parties and issue a decision. There is no further appeal from the decision of the Row Officer.

(Pl.'s Mot. Summ. J. Ex. 7,8 ¶ 18.)

Most relevant to the instant Motion for Partial Summary Judgment, the procedure also states "The election of a grievant to pursue any such dispute under this procedure shall constitute a waiver of his/her right to pursue such dispute in any other forum, and *the election of a grievant to pursue any such dispute in any other forum shall constitute a waiver of his/her right to pursue such dispute under this procedure.*" (Pl.'s First Mot. Summ. J. Ex. 7,8 ¶ 18(a) (emphasis added).) The procedure does *not* discuss what other forums may be available to grievants for resolving disputes.

Plaintiff alleges that beginning sometime between September 2001 and March 2003[1], he was subject to race-based employment discrimination and related retaliation by other County

---

[1] Plaintiff alleges that in September 2001, he "opposed race discrimination" and reported an officer for making racial slurs about him. In the next paragraph of his Complaint, Plaintiff asserts that discrimination, retaliation, and humiliation commenced "on or about March 2003." (Pl.'s First Am. Compl. ¶ 9,10.)

employees. (Pl.'s First Am. Compl. ¶ 10.) According to Plaintiff, this discrimination took a number of forms, including losing vacation time and being forced to handwrite a report of his complaints of racial discrimination. (Pl.'s First Am. Compl. ¶ 10.) In 2007, and after a particular "campaign of harassment" that Plaintiff alleges was waged by Defendant Detective Stephen Forzato (Pl.'s First Am. Compl. ¶ 12), the following series of events took place:

- December 18, 2007: Plaintiff filed a charge of employment discrimination with the Pennsylvania Human Relations Commission (PHRC) and cross-filed the charge with the Equal Employment Opportunity Commission (EEOC). (Pl. First Mot. Summ. J. ¶ 13.)

- August 8, 2008: Plaintiff was terminated from his position with the Montgomery County Detectives Bureau. (Pl.'s First Am. Compl. ¶ 32); (Defs.' Answer ¶ 32.)

- October 2008: Plaintiff's previous counsel wrote a letter to the American Arbitration Association, dated October 21, 2008, requesting a list of potential arbitrators. In this letter, Plaintiff's counsel states the following:

    Mr. Roberts presently is engaged in litigation against his employer, Montgomery County, before the Pennsylvania Human Rights Commission. . . .

    Montgomery County Detectives operate under a collective bargaining agreement in the form of a Memorandum of Understanding . . . The Memorandum of Understanding includes a grievance procedure which provides a two-step process ending at the row officer level. If one elects to use the grievance procedure, this is the final step. . . .

    However, the contractual grievance procedure provides that an employee may elect to pursue the dispute in another forum for redress. In this case, Detective Roberts *has elected not to grieve the discipline imposed upon him*, but to seek a hearing on the above issues by the American Arbitration Association . . .

    (Pl.'s Reply Defs.' Resp. Pl.'s Second Mot. Summ. J. (Doc. No. 38) Ex. 10-12 (emphasis

added).)

- November 2008: The County declined Plaintiff's request to participate in arbitration in a letter dated November 17, 2008. (Pl.'s Reply Ex. 10-12.)

- October 23, 2009: Plaintiff filed the instant action pursuant to a Right-to-Sue letter issued by the U.S. Department of Justice on January 20, 2010. (Pl.'s Supplemental Opp'n Resp. (Doc. No. 10) Ex. 1.)

### III. Discussion

The Third Circuit has clearly recognized that federal policy strongly encourages the use of arbitration to resolve labor disputes. Rite Aid of Pa., Inc. v. United Food Workers and Commercial Workers Union, Local 1776, 595 F.3d 128, 131 (3d Cir. 2010). But whether a party must submit a dispute to arbitration is "a matter to be determined by the courts on the basis of the contract entered into by the parties." Atkinson v. Sinclair Refining Co., 370 U.S. 238, 241 (1962); see also Gateway Coal Co. v. United Mine Workers, 414 U.S. 368, 374 (1974). When interpreting a contract to determine whether parties have agreed to arbitrate a particular dispute, a court may look only to the construction of the arbitration clause or grievance procedure itself and to any other contractual provisions relevant to the scope of that clause or procedure. See Rite Aid, 595 F.3d at 131-32.

Upon review of the Memorandum of Understanding, the Court finds that this agreement *neither requires* employees to resolve disputes through the Grievance and Arbitration Procedure or any form of "arbitration," *nor entitles* employees to an arbitration with an outside agency.

Certainly, the language of this memorandum implies that grievants are permitted to pursue their disputes in other forums, which might include filing charges with the PHRC and EEOC, filing suit in federal or state court, and/or requesting a formal arbitration with the AAA. But the Memorandum of Understanding itself does not guarantee a grievant the right to an arbitration with the AAA or another outside agency.[2] Only the internal, two-step procedure is guaranteed available to grievants by the memorandum.

Plaintiff's own representation through counsel, in the October, 21, 2008, letter to the American Arbitration Association, stated that Mr. Roberts would *not* be participating in the internal grievance procedure outlined in the Memorandum of Understanding. It appears disputed by the parties, and certainly unclear to the Court, whether Plaintiff did not elect to file an grievance as per the Memorandum of Understanding because he understood that right to be waived due to his filing claims with the PHRC and EEOC—or rather because he mistakenly believed that the Memorandum of Understanding entitled him to a formal arbitration with an outside agency. Nevertheless, under the plain language of Grievance and Arbitration Procedure, Plaintiff's decision to forgo the option to elect the internal grievance procedure and instead pursue charges with the PHRC and EEOC effectively waived his right to have the dispute resolved through the Grievance and Arbitration Procedure.[3]

---

[2] In fact, the Grievance and Arbitration Procedure within the Memorandum of Understanding makes no specific mention of "arbitration" at all, aside from the heading of paragraph 18.

[3] In support of his motion, Plaintiff cites to Wright v. Universal Maritime Services Corp., 525 U.S. 70 (1998). Plaintiff argues that Wright stands for the proposition that, in the event that an employee files a statutory employment discrimination claim, a "very general" arbitration clause should not serve as the basis to waive that employee's right to resolve a dispute according to the terms of a collective bargaining agreement. The Court in Wright, however, held that an arbitration clause must be "clear and unmistakable" if it functions to waive an employee's right to a *judicial forum* for an employment discrimination claim. 525 U.S. at 80. The Grievance and

Plaintiff has offered the Court no evidence to indicate that he, either prior to or subsequent to his termination, attempted to file a written grievance with his Department Head with the intent of initiating internal proceedings under the terms of the Memorandum of Understanding. Instead, Plaintiff argues only that he requested and was denied an arbitration session with the AAA, a forum to which Plaintiff has no right under the memorandum.[4] (Pl.'s First Mot. Summ. J. Ex. 9.) Therefore, the Court finds that Plaintiff is *not* entitled to now elect to proceed according the Grievance and Arbitration Procedure outlined in the Memorandum of Understanding, as Plaintiff waived this option by filing charges with the PHRC, EEOC, and in federal court. Accordingly, Plaintiff's First Motion for Partial Summary Judgment is denied as it pertains to the arbitration of Plaintiff's dismissal.

My Order follows.

---

Arbitration Procedure clearly does not function to waive employees' rights to pursue their claims in other forums. Thus, the Court's decision on this issue in <u>Wright</u> does not apply to the instant Motion.

[4]As Defendants suggest in their response to Plaintiff's motion, Plaintiff may have once had a colorable argument that he was entitled to dispute his termination by proceeding under the Grievance and Arbitration Procedure. But Plaintiff's decision to file the instant action, arguing that his termination violated his civil rights, and Plaintiff's filing of charges with the PHRC and EEOC, waived his option to only now elect the internal grievance procedure under the terms of the Memorandum of Understanding.