# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **Reginald A. Roberts** | : | CIVIL ACTION |
| **Plaintiff,** | : | |
| | : | |
| v. | : | |
| | : | |
| **Risa Vetri Ferman, et al.** | : | |
| **Defendants.** | : | NO. 09-4895 |

## MEMORANDUM AND ORDER

L. Felipe Restrepo                                                           February 17, 2011
United States Magistrate Judge

      Before the Court is Plaintiff's Petition for Injunction (Doc. 59), filed pursuant to Rule 65 of the Federal Rules of Civil Procedure. Plaintiff's petition requests the Court to order arbitration between Plaintiff and Defendant, Montgomery County, on the issue of Plaintiff's termination. In addition to Defendants' Response in Opposition (Doc. 62) and Plaintiff's Reply (Doc. 63), the Court has reviewed Defendants' Supplemental Brief in Response to Plaintiff's Motion for Injunctive Relief (Doc. 69), Plaintiff's Letter Brief (Doc. 75), Defendants' Second Supplemental Brief (Doc. 86), and Plaintiff's Notice to Renew (Doc. 77), which contains exhibits relevant to Plaintiff's petition. On December 3, 2010, the Court heard oral argument, during which the parties addressed Plaintiff's Rule 65 Petition. For the reasons that follow, Plaintiff's motion is denied.

# I. BACKGROUND

Plaintiff, Reginald Roberts, commenced employment as a County Detective in Montgomery County on March 15, 1999. (Pl.'s First Am. Compl. ¶ 8; Defs.' Answer ¶ 8.) At all times during his employment as a County Detective, Plaintiff was party to a collective bargaining agreement (hereinafter "Agreement") between Montgomery County and the Montgomery County Detective Bureau; the Agreement was memorialized in the form of a "Memorandum of Understanding." (Defs.' Supplemental Br., Ex. A (Doc. 74).) This Agreement contained a "Grievance and Arbitration Procedure" that, as stated, applied to matters of discipline as well as to disputes involving the application or interpretation of the Agreement itself. (Id. ¶ 18(a).)

The grievance procedure consisted of the following steps:

> Step #1:
>
> A. **Department Head**: If the employee and his/her immediate supervisor cannot resolve a grievance informally, the employee shall send a written statement (E-mail is not acceptable nor proper) of his/her grievance to the Department Head within fifteen (15) calendar days of when the employee becomes aware of the grievance. The Department Head receiving the written grievance shall meet with the employee and their representative if so desired, within ten (10) days, and other appropriate persons in a good faith effort to resolve this grievance. The Department Head shall give the employee a written decision within ten (10) calendar days following the meeting.
>
> Step #2:
>
> A. **Row Officer:** (District Attorney of Montgomery County) In the event that no satisfactory solution is reached at the first step, the employee may appeal the grievance to the District Attorney or his/her designee. Such an appeal must be made within ten (10) calendar days after the rendering of the decision as a result of the first step or after the decision at the first step should have been made. The employee shall made [sic] a written statement of his/her grievance and why the decision, if one is rendered, is wrong, and if no decision is rendered, what the employee feels the decision should be. The Row Officer or

> his/her designee will convene a fact finding meeting of the involved parties within fifteen (15) days of receiving and [sic] written grievance. The Row Officer or his/her designee shall then render a decision within sixty (60) calendar days, unless extended by mutual agreement for no more then [sic] thirty (30) days.
>
> B. This is the final step of the grievance procedure and there will be no further remedy once the decision is handed down by the Row Officer or his/her designee.

(Id.) Further, the Agreement contained a provision following Paragraph 19, which stated "The Memorandum of Understanding . . . shall constitute the entire Agreement between the parties and there are no verbal understandings, conditions, or stipulations aside from the terms set forth herein . . . ." (Defs.' Supplemental Br., Ex. A.)

On August 8, 2008, the County terminated Plaintiff from his position with the Detective Bureau. (Pl.'s First Am. Compl. ¶ 32; Defs.' Answer ¶ 32.) Upon his termination, Plaintiff did not attempt to file a grievance pursuant to the two-step grievance procedure outlined in the Agreement. (Pl.'s Rule 65 Pet. 6 ¶ 6.) But in October 2008, Plaintiff requested arbitration with the County on the issue of his termination. (Pl.'s Notice to Renew, Ex. 1 at 7-9.) The County subsequently notified Plaintiff of its decision to decline participation in arbitration. (Pl.'s Notice to Renew, Ex. 1 at 10.)

On October 23, 2009, Plaintiff filed this action against Montgomery County and a number of County employees alleging employment discrimination and retaliation pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, and the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.* Plaintiff also alleged violations of his federal civil rights pursuant to 42 U.S.C. § 1983. (Pl.'s First Am. Compl. 1.)

Approximately one year after filing suit, Plaintiff filed his Rule 65 Petition, requesting

that the Court order Defendant Montgomery County to arbitrate the issue of Plaintiff's termination from employment as a county detective. After considering Plaintiff's Petition, Defendants' Response, and Plaintiff's Reply, the Court ordered the parties to appear for a hearing on December 10, 2010 to address all outstanding motions, including Plaintiff's Petition. The Court subsequently amended its order on November 30, 2010, directing the parties to appear for oral argument on outstanding motions on December 3, 2010; December 10, 2010, was reserved for an evidentiary hearing on Plaintiff's Rule 65 Petition in the event that the Court found such a hearing was required.

At the December 3, 2010, oral argument, after addressing the issue of whether Plaintiff was entitled to arbitration per his Rule 65 Petition, the parties agreed to provide the Court with additional briefings on the issue of arbitration. The parties also agreed to reschedule the potential December 10, 2010, evidentiary hearing. Both parties filed timely supplemental briefs on the issue of arbitration.

## II. Legal Standard

Federal Rule of Civil Procedure 65 governs a federal court's issuance of preliminary injunctions.[1] A "preliminary injunction is an extraordinary and drastic remedy, one that should

---

[1] Plaintiff's Rule 65 Petition (Doc. 59) and the proposed order attached thereto request that the Court issue a preliminary injunction; however, Plaintiff's Reply (Doc. 63) and Plaintiff's Notice to Renew (Doc. 77) make mention of temporary restraining orders. Although Rule 65 governs both preliminary injunctions and temporary restraining orders, the two are distinct forms of relief. A preliminary injunction generally requires notice to the opposing party. And because the purpose of a preliminary injunction is to preserve the status quo during trial, it will often remain in place until the conclusion of a trial on the merits. Fed. R. Civ. P. 65(a). Temporary restraining orders, by contrast, may be issued without notice to the opposing party and generally expire within fourteen days of issuance. Fed. R. Civ. P. 65(b). Given that Plaintiff's proposed order requests a preliminary injunction, the court will treat Plaintiff's Rule 65 Petition as a request for a preliminary injunction rather than a request for a temporary restraining order.

not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997). "Furthermore, when the preliminary injunction is directed not merely at preserving the status quo but, as in this case, at providing mandatory relief, the burden on the moving party is particularly heavy." Punnett v. Carter, 621 F.2d 578, 582 (3d Cir. 1980).

For a Court to grant a preliminary injunction, a plaintiff must show "(1) a likelihood of success on the merits; (2) that [he] will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." Rogers v. Corbett, 468 F.3d 188, 192 (3d Cir. 2006). A plaintiff carries the burden to establish *every* element in his favor; otherwise, this extraordinary remedy is inappropriate. P.C. Yonkers, Inc. v. Celebrations the Party Seasonal Superstore, LLC, 428 F.3d 504, 508 (3d Cir. 2005).

For the reasons that follow, Plaintiff has not met his burden of proof of demonstrating that he is likely to succeed on the merits of his claim.[2]

### III. DISCUSSION

A. *Likelihood of Success on the Merits*

Plaintiff's Rule 65 Petition seeks a preliminary injunction from the Court mandating that Defendant Montgomery County participate in binding arbitration with Mr. Roberts. Plaintiff

---

[2] Because the Court has found that Plaintiff is unlikely to succeed on the merits, the Court need not examine whether Plaintiff has established the other elements necessary for a preliminary injunction. See, e.g., Charming Shoppes Inc. v. Crescendo Partners II, L.P., 557 F. Supp. 2d 621, 624 n.1 (E.D. Pa. 2008).

requests that the Court order such arbitration to take place "with and through the American Arbitration Association (AAA)," in order to arbitrate the termination of Plaintiff from his position as a detective with the County. (Pl.'s Rule 65 Pet. 2 ¶¶ 2, 3.) Specifically, Plaintiff requests arbitration with the County as to whether the County "had good cause to terminate Reginald A. Roberts and the punishment proper or just for the offense, facts, and events."[3] (Pl.'s Rule 65 Pet. 2 ¶ 3.) Plaintiff seems to proceed on the theory that, under the terms of the Pennsylvania Policemen and Firemen Collective Bargaining Act (Act 111), 43 P.S. § 217.1, *et seq.*, and the Agreement in existence between the parties at the time of Plaintiff's termination, Plaintiff, at his election, is entitled to arbitrate his termination. (Pl.'s Rule 65 Pet. 2 ¶ 5; Pl.'s Letter Br. 1-4.)

The parties do not dispute that County Detectives, such as Plaintiff, are considered policemen for purposes of establishing their right to collective bargaining under Act 111. Hartshorn v. County of Allegheny, 333 A.2d 914 (Pa. 1975). And as such, County Detectives

---

[3] Plaintiff's Rule 65 Petition (Doc. 59) and the proposed order attached thereto requests that this Court order Montgomery County to arbitrate only whether just cause existed for Plaintiff's termination. However, Plaintiff's subsequent Letter Brief (Doc. 75), submitted in support of his original Rule 65 Petition, suggests that the Court should order the parties to arbitration on the issues of Plaintiff's termination, the denial of Heart and Lung benefits, and the interpretation of "provision 18" of the Agreement. (Pl.'s Letter Br. 1, 2.) Plaintiff's Notice to Renew (Doc. 77), which addresses Plaintiff's Rule 65 Petition, states that Plaintiff wishes to "invoke arbitration for and to arbitrate the termination." (Pl.'s Notice to Renew 2.) At oral argument, Plaintiff indicated that he sought arbitration to determine "whether his grievance [was] timely, whether there's some waiver issue, or even what [the "Grievance and Arbitration Procedure" provision of the Agreement] means . . . ." (Mot. Hr'g Tr. 10, December 3, 2010.) In short, despite numerous requests by the Court for Plaintiff to clarify what relief he ultimately seeks, Plaintiff has not done so. Accordingly, the Court will rely on Plaintiff's proposed order, attached to Plaintiff' Rule 65 Petition, as Plaintiff's clearest articulation of his desired relief. The Court will consider only whether Plaintiff is entitled to arbitration on the issue of just cause for his termination from employment as a Montgomery County detective.

may engage in collective bargaining with their public employers, pursuant to the procedure outlined in Act 111, to establish and agree upon the terms and conditions of employment. 43 P.S. § 217.1.

Act 111 also explicitly provides for a system of "interest arbitration," whereby parties to the collective bargaining process must submit issues on which they cannot agree to binding arbitration. 43 P.S. § 217.4(a); City of Scranton v. Fire Fighters Local Union No. 60 of Int'l. Ass'n of Fire Fighters AFL-CIO, 923 A.2d 545, 548 (Pa. Commw. Ct. 2007). This system is outlined as follows in the Act:

> If in any case of a dispute between a public employer and its policemen or firemen employees the collective bargaining process reaches an impasse and stalemate, or if the appropriate lawmaking body does not approve the agreement reached by collective bargaining, with the result that said employers and employees are unable to effect a settlement, then either party to the dispute, after written notice to the other party containing specifications of the issue or issues in dispute, may request the appointment of a board of arbitration.
>
> For purposes of this section, an impasse or stalemate shall be deemed to occur in the collective bargaining process if the parties do not reach a settlement of the issue or issues in dispute by way of a written agreement within thirty days after collective bargaining proceedings have been initiated.

43 P.S. § 217.4(a).

Act 111 does *not* expressly provide for or mandate "grievance arbitration," a process by which police and fire personnel may resolve a dispute, as to the interpretation of an *existing* collective bargaining agreement and potential violations of that agreement, by submitting a grievance to binding arbitration. Upper Makefield Twp. v. Pa. Labor Relations Bd., 717 A.2d 598, 601 (Pa. Commw. Ct. 1998), aff'd, 562 Pa. 113 (2000); Pa. State Police v. Pa. State

7

Troopers Ass'n, 741 A.2d 1248, 1250 (Pa. 1999). Nevertheless, courts have acknowledged that, although not explicity mandated by Act 111, a system of binding arbitration *may* be used by parties to an existing collective bargaining agreement in order to resolve interpretation disputes. See, e.g., Twp. of Moon v. Police Officers of the Twp. of Moon, 498 A.2d 1305 (Pa. 1985).

Indeed, courts applying Pennsylvania law have often imposed a duty upon police and fire personnel and employers to submit employment grievances to binding arbitration in certain circumstances. See, e.g., Chirico v. Bd. of Supervisors for Newton Township, 470 A.2d 470, 475 (Pa. 1983); Twp. of Moon, 498 A.2d at 1311-12. But where a collective bargaining agreement clearly outlines a grievance procedure that does not include arbitration, courts have held that Act 111 does not require the parties to submit to grievance arbitration. Instead, arbitration will only be ordered where a void exists in the existing agreement between the parties. See W. Lampeter Twp. v. Police Officers of W. Lampeter Twp., 598 A.2d 1094 (Pa. Commw. Ct. 1991), appeal denied, 531 Pa. 568 (1991).

In West Lampeter, a collective bargaining agreement between the Township and the Township Police Officers contained a contractual grievance procedure. Id. at 227-29. The grievance procedure did not include a step or provision for the parties to submit to binding arbitration; rather, it expressly provided that a decision by the employer's board of supervisors served as the final step of a two-step procedure. Id. An officer who wished to dispute his ten-day suspension had his grievance processed through step one of the contractual grievance procedure, but requested binding arbitration upon reaching step two. Id. The Township then refused to participate in arbitration. Id.

The Pennsylvania Commonwealth Court, in holding that the Township was not required

8

to arbitrate, found the collective bargaining agreement to be "devoid" of any requirement for grievance arbitration. Id. at 231. The Court agreed with the Township's argument that "[b]y not providing, on the face of the agreement, for arbitration of grievances, the parties . . . have made 'a conscious decision to exclude arbitration from the dispute resolution process.'" Id. The Court went on to hold that "[h]aving freely bargained for the grievance procedure, the parties are bound by it, and therefore, the officers are mistaken in their belief that they may, at their pleasure, substitute binding arbitration for . . . the grievance procedure." Id.

The Commonwealth Court reiterated this reasoning in Upper Makefield Township v. Pennsylvania Labor Relations Board, 717 A.2d 598 (Pa. Commw. Ct. 1998), aff'd, 562 Pa. 113 (2000). The dispute in Upper Makefield surrounded the Township's termination of a police officer, for insubordination and conduct unbecoming an officer, during his probationary period. Id. at 599. The officer grieved his termination according to the four-step grievance procedure set forth in the collective bargaining agreement between the Township and the Township Police Association. Id. After the grievance was denied at the last step of the process, the Police Association notified the Township that it intended to proceed to binding arbitration; the Township refused to participate because the grievance procedure did not provide for such arbitration. Id.

Ultimately, the Court held that the Township had no duty to submit the grievance to arbitration and expressly reaffirmed the reasoning and holding of West Lampeter. Id. at 603. The Court stated that its holding neither enlarged nor diminished

> [t]he rights of public employees under Act 111 to arbitration in circumstances where this right is established, such as when a collective bargaining impasse occurs, when an agreement or interest award expressly provides for a grievance procedure culminating in

9

>binding arbitration or when an ambiguity exists in an existing interest award.

Id.

In this case, Plaintiff argues that the "Grievance and Arbitration Procedure" contained within the existing Agreement permits a grievant to elect *either* an internal process to resolve disputes over discipline[4] or to seek arbitration (Pl.'s Rule 65 Pet. 5 ¶ 4); the Court does not agree. The Court acknowledges that the heading under which the procedure is set forth, which reads "Grievance and Arbitration Procedure," is somewhat misleading. But *nowhere* in the text of the two-step procedure are grievants provided with a right to submit grievances to arbitration. (Defs.' Supplemental Br. Ex. A ¶ 18.)

The grievance procedure set forth in the Agreement at issue bears close resemblance to those grievance procedures addressed by the Commonwealth Court in West Lampeter and Upper Makefield. Accordingly, the Court concludes that, like the defendants in West Lampeter and Upper Makefield, Defendant Montgomery County was under no duty or obligation to submit the issue of Plaintiff's termination to arbitration with the American Arbitration Association. Any contention by Plaintiff that he has the right to grieve his termination and related discipline in front of an arbitration panel is not supported by Act 111, Pennsylvania case law, or the Agreement itself.[5] Therefore, Plaintiff has not made the requisite showing of a reasonable

---

[4] Plaintiff noted, during oral argument, that his termination can be characterized as a matter of discipline. Specifically, Plaintiff stated "discipline, under that bargaining agreement, is termination. And there's no dispute in this case that he was disciplined for what they refer to as releasing confidential information and not doing his job. So, they fired him for that. That's discipline." (Mot. Hr'g Tr. 12/3/2010, at 15.)

[5] Plaintiff offers the deposition transcript of Chief County Detective Oscar P. Vance, Jr. as evidence demonstrating that Montgomery County Detectives are entitled to arbitration on the

likelihood of success on the merits.

B. *Need for an Evidentiary Hearing*

Federal Rule of Civil Procedure 65 does not require a federal district court to hold a hearing prior to ruling on a preliminary injunction. See Fed. R. Civ. P. 65(a). Indeed, the Third Circuit has opined that a district court need not hold a hearing in a number of circumstances, including, but not limited to, when (1) a movant proceeds on a legal theory that cannot be sustained and thus the movant cannot show a likelihood of success on the merits; (2) relevant facts are either not in dispute or have been resolved at earlier stages of the case; and (3) a movant "has not presented a colorable factual basis to support the claim on the merits or the contention of irreparable harm." Bradley v. Pittsburgh Bd. of Educ., 910 F.2d 1172, 1175-76 (3d. Cir. 1990).

There is no factual dispute between the parties as to Plaintiff's request to arbitrate his termination, Defendant's decline of Plaintiff's request, the text of the Agreement, or the applicability of the Agreement to Plaintiff. Further, there is no dispute that Plaintiff did not grieve his termination according to the internal, two-step "Grievance and Arbitration Procedure" provided in the Agreement. As discussed, Plaintiff has not presented a colorable factual basis to support his claim on the merits that he is entitled to arbitration. Therefore, the Court will exercise its discretion not to hold an evidentiary hearing on this issue and instead will rule on Plaintiff's motion for a preliminary injunction on the basis of the parties' written submissions.

---

issue of termination. (Pl.'s Notice to Renew 2, Ex. 4.) The Court, however, understands Detective Vance's testimony to state just the opposite: "They have a right to . . . whatever rights are stated under the Agreement of Memorandum of Understanding." (Vance Dep. 41.)

## IV. Conclusion

Plaintiff has failed to make the requisite showing for the Court to issue a preliminary injunction. For the foregoing reasons, Plaintiff's motion for preliminary injunction (Doc. 59) is **DENIED.** An implementing order follows.