**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| REGINALD ROBERTS | : | Civil Action No: 09-4895 |
| | : | |
| v. | : | |
| | : | |
| RISA VETRI FERMAN, MONTGOMERY COUNTY, | : | |
| OSCAR VANCE, JR., SAMUEL GALLEN AND | : | |
| STEPHEN FORZATO | : | |

## PRE-TRIAL MEMORANDUM OF DEFENDANTS

I.    **Nature of action and jurisdiction:**

Plaintiff  instituted this action by filing a Complaint on or about October 23, 2009.

Plaintiff's Complaint alleges violation of his rights pursuant to Title VII and the Pennsylvania

Human Relations Act as well as violation of his freedom to petition right under the First

Amendment and due process under the Fourteenth Amendment,  pursuant to 42 U.S.C. §1983.

The following claims remain for trial:

Count I – Title VII Retaliation, Defendant, Montgomery County – Plaintiff maintains this

claim regarding: a) filing a PHRC Complaint, b) participating in a PHRC fact-finding, and c)

sending correspondence to Defendant County complaining about an allegedly racially offensive

photograph and placard.

Count II – First Amendment retaliation, Defendants Ferman, Vance, Gallen and Forzato-

petition clause claim regarding conditions in the workplace, filing PHRC Complaint, and

testifying at PHRC fact-finding re: the following allegedly adverse employment actions: causing

plaintiff to work in a dangerous work environment (Def. Forzato), forced transfer out of the

allegedly dangerous work environment (Defs. Vance, Gallen and Forzato), and termination

(Defs. Ferman, Vance and Gallen).

Count IV – 42 U.S.C. § 1983, 14th Amendment, equal protection, Defendants, Ferman, Gallen and Vance, as to Plaintiff's termination;

Count V – Pennsylvania Human Relations Act, Retaliation - Aiding and Abetting, Defendants Montgomery County, Ferman, Vance and Gallen- Plaintiff maintains this claim regarding: a) filing a PHRC Complaint, b) participating in a PHRC fact-finding, and c) sending correspondence to Defendant County complaining about an allegedly racially offensive photograph and placard.

**II.      <u>Statement of facts (Defendant) :</u>**

Having been told that his performance was not up to the standards of the Office of the District Attorney of Montgomery County, Detective Reginald Roberts, for the first time, alleged he had developed tuberculosis as a result of working in an office containing mold.   Doing nothing to improve the performance that resulted in a mere two arrests in 2007, Plaintiff Roberts set about the task of, again for the first time, alleging that his Boss, Oscar Vance, a forty year legend in law enforcement, and himself an African American, and Lieutenant Stephen Forzato (the supervisor who insisted he earn his paycheck) had discriminated against him, based on race. Plaintiff took a series of photographs of the inside of his headquarters, a confidential location that Plaintiff himself described as a "super secret location".  Telling Chief Vance that he had taken twenty-seven photographs, and taken a placard seized from a drug dealer, Plaintiff claimed that he had distributed the photographs in the community at large, refusing to identify exactly who had received them, but making sure that Vance and Forzato believed that they had gone to the Norristown Ministerium, a group whose treasurer is the mother of a man Forzato had arrested for raping a young boy, and that the pictures included a picture of Forzato's young son, which identified the school district where the boy attended.  Still, District Attorney Risa Vetri-Ferman reserved judgment, as Plaintiff had claimed he had taken the twenty-seven photographs for

presentation to the Pennsylvania Human Relations Commission.  At an August 7, 2008 Fact-

Finding Conference before the PHRC, Plaintiff failed to produce the photographs.   The

Commission would later find that Plaintiff's allegations were unfounded, and that a photograph

and placard at Plaintiff's Headquarters, were *not* racially offensive.  Given Plaintiff's poor

performance, his disobeying an order to return the placard which he had stolen from his

headquarters, his refusal to identify to whom he had shown photographs of the "super secret"

headquarters, his dishonesty in claiming the photographs were evidence at the PHRC, and his

appallingly poor judgment, District Attorney Ferman decided that she had seen quite enough.

On August 8, 2008, she exercised her absolute right under Pennsylvania law, and terminated

Reginald Roberts' employment.

        While the District Attorney was both within her statutory rights, and completely justified

as a matter of law in terminating Plaintiff's employment, evidence acquired after his termination

revealed that he had lied all along about the number of photographs he had taken (providing nine

(9), and claiming twenty-seven (27), when there were actually over one hundred and thirty (130)

such photos),  had conspired with a convicted felon who had attempted to kill one of Plaintiff's

former co-workers to attempt to gain title to a placard that had already been forfeited to the

people of Montgomery County, and had referred to Oscar Vance as an "Uncle Tom".

        The PHRC found, after thorough investigation, that each of Plaintiff's three Complaints

"should be dismissed because the facts of the case do not establish that probable cause exists to

credit the allegations…"  Thereafter, Plaintiff filed suit in the Eastern District of Pennsylvania.

        By Plaintiff's own admission, Reginald Roberts was an at-will employee serving at the

pleasure of the District Attorney of Montgomery County, Risa Vetri Ferman.  In January of

2007, Stephen Forzato was promoted to Lieutenant in the Montgomery County Detective

Bureau, and became Reginald Roberts' boss.  Early in 2007, Forzato reported to Deputy Chief Samuel Gallen that there were problems with Reginald Roberts' work performance, which was not up to par.  Forzato called all detectives in, and essentially told them there was a 'new sheriff in town', and that he expected all of them to do the work expected by the taxpayers of Montgomery County.  As part of his new assignment, Forzato also asked all detectives in the NET House to provide him notice of any problems with the physical plant.  He placed these concerns in a memorandum to Continental Realty, management company for the property, making Reginald Roberts' complaint of a leaky roof, a high priority, listing it as "number 2" in his memorandum to Continental Realty.  While Plaintiff would later claim that the workplace made him sick, he conceded in deposition that he never told Forzato, or anyone else for that matter, that he was unable to perform his work duties because of an illness.  In fact, there would be no evidence of inordinate sick usage, until Forzato's complaints about Roberts' performance were formalized through a memorandum, and a required meeting between Plaintiff, Chief Oscar Vance and Deputy Chief Sam Gallen.

Deputy Chief Gallen insisted on documentation of Reginald Roberts' performance problems.  That documentation proved that, for calendar year 2007, Reginald Roberts arrested only two individuals.  Roberts concedes that one of those arrests was not even related to narcotics.  One explanation for this poor performance is provided by Reginald Roberts, who claims that once Lt. Forzato told him he was not performing well, he ceased generating cases on his own, and only worked on those cases that were assigned to him.  While Chief Vance and Deputy Chief Gallen sat Plaintiff down to aid him in becoming a better performer, within days he began a four month sick leave, now claiming that the workplace had made him sick.

Among the documents received from Plaintiff, was a letter from Dr. Fleishman, Plaintiff's physician, indicating he should not return to work in the NET House. Based on this requirement, Plaintiff was transferred to a different unit, being so informed on April 20, 2008. Despite the fact that he was no longer assigned to the NET House, and his claims that his mere presence in that house made him sick, Plaintiff took it upon himself to go to his former head quarters on April 26, 2008, when no one else was present, and take extensive photographs of the inside of the building, a kitchen and refrigerator, and views of offices showing both the outside of the location, a picture of Lt. Forzato's son, and other material throughout a location Plaintiff himself described as "confidential" and "super secret".

Plaintiff next delivered a Memorandum to District Attorney Risa Ferman, accusing the District Attorney's Office of engaging in racially discriminatory behavior, by allowing a picture of five African American females, and a placard forfeited to the District Attorney's Office through the seizure of a drug dealer's vehicle, to be present in the NET House. The photograph itself was recovered during a homicide investigation, and was placed on the refrigerator to see if any of the detectives who work there recognized any of the persons in the picture. While Plaintiff has claimed that the picture should have been on an evidence voucher of some kind, and vehemently professed that he himself would never do such a thing, he was at a loss to explain why numerous surveillance photos from a 1998 drug investigation were in his desk, rather than on such an evidence voucher.

As to the "Island Home Remodeling" placards, it is undisputed that they were present on the side of a truck utilized by drug dealer O'Neill Abrahams, and that Abrahams attempted to run over one of Roberts' former co-workers, who had showed up to arrest him. Plaintiff continued

his demonstrated poor judgment, in showing Abrams the pictures of the inside of the NET

House, including the photograph of Lt. Stephen Forzato's son, and the five females.

While Plaintiff may have been able to make some argument regarding showing these

photographs to law enforcement personnel who were not assigned to the NET House, it would

seem apparent that there is no basis to show such pictures to a drug dealer, who tried to kill one

of your co-workers.  In a December, 2007 meeting with Chief Vance and Deputy Chief Gallen,

Plaintiff informed his superiors that he had taken twenty-seven photographs inside the NET

House.  Plaintiff refused to identify what exactly these photographs showed, preferring to foster

the opinion they compromised the security of the NET House and its officers.  Plaintiff also told

Vance and Gallen that he had distributed the photos throughout the community, but refused to

tell them exactly who had viewed the pictures.

While Plaintiff later showing the picture to O'Neill Abrahams, evinces that he was

entirely indiscriminate in who he let in on the content of these photos, at the time, he chose

merely to keep his boss in the dark.  It would not be until the deposition of Stephen Forzato,

December 10, 2010,  that Plaintiff would finally turn over some of the photographs that he had

taken. [1]  Plaintiff would also testify at his deposition that he showed the photos not only to

Abrams, but also to his mother and other family members, "friends", his pastor, his psychologist,

members of the NAACP, and others.

Prior to August 7, 2008, Defendants believed the plaintiff was claiming that the

photographs were required as evidence before the Pennsylvania Human Relations Commission.

At a fact-finding conference, before the PHRC, however, it was learned that Plaintiff had never

turned the photos over to the Commission.  While District Attorney Ferman had long considered

---

[1] While Defendants' counsel had viewed over 130 photographs in an inspection at the office of Plaintiff's former counsel, Attorney Goodman, photographs provided by Plaintiff's current counsel, Attorney Puricelli, contain less than that amount, a discrepancy for which Plaintiff has provided no explanation.

Oscar Vance's recommendation that Reginald Roberts be terminated for his poor judgment, disrespect and performance problems, this final falsehood, caused Ferman to make the decision to terminate Reginald Roberts' employment, on August 8, 2008, pursuant to her authority under state law.

Finally, and perhaps most importantly, discovery has revealed that Reginald Roberts referred to Oscar Vance, an African American, 40 year law enforcement legend, as an "Uncle Tom" throughout the African American community in Norristown.  Plaintiff's appalling lack of respect is manifest in these comments.  One can hardy think of more racially inflammatory and discriminatory action than the comments of Mr. Roberts, about Chief Vance.  Plaintiff's termination was, and remains, entirely proper.

**III.**     **Damages**:

It is Defendants' position that Plaintiff has suffered no constitutional or other harm, and is therefore not entitled to recover any damages.

**IV.**     **Witnesses:**

1. Plaintiff, Reginald Roberts;

2. Defendant, District Attorney Risa Vetri Ferman;

3. Defendant, Chief of Detectives, Oscar P. Vance;

4. Defendant, Deputy Chief of Detectives, Samuel Gallen;

5. Defendant, Lieutenant, Stephen Forzato;

6. Witness, Lieutenant, Mark Bernstiel;

7. Witness, Anthony Spagnoletti;

8. Witness, Robert Wright;

9. Witness, Shawna Haines, Pennsylvania Human Relations Commission;

10. Witness, Detective Erick Ecchevarria;

11. Witness, Detective Michael Altieri;

12. Witness, Detective Mike Fedak; and

13. Witness, Christopher Boyle, Esquire.

V.    **Defendants' Exhibits**

1.   Island Home Remodeling Placard & Photo of Oneill Abrahams (1468)

2.   Photograph of five African American females from NET House

3.   Tri-State landscaping placard.

4.   1998 drug surveillance photos from Plaintiff's desk

5.   Affidavit of Charles Mandracchia

6.   June 9, 2008 delivery & contents, dated May 14, 2008, w/color photos

7.   Property record of items removed from Plaintiff's desk

8.   Diagrams of NET House

9.   October 31, 2007 Court Order forfeiting Oneil Abrahams' vehicles (7659)

10. Good Fellas framed picture from Plaintiff's office

11. Timeline of events

12. Plaintiff's Complaint

13. September 20, 2001 Memo Vance to Roberts (165)

14. Performance evaluation of Plaintiff by Forzato (265)

15. January 22,2007 letter Forzato to Continental Realty (279)

16. May 9, 2007 letter Holtzman to Continental (280)

17. August 10, 2007 letter Roberts to Continental (281)

18. August 13, 2007 e-mail Forzato Altieri et al (287)

19. June 25, 2007 email Roberts to Echevarria et al (294)

20. December 10, 2007 letter Roberts to Gallen et al

21. Defendants Interrogatories & response

22. Roberts v US Airways Complaint and Answer E.D. Pa. No. 10-2236

23. Memorandum of Understanding December 31, 2006

24. Grievance and Arbitration Procedure

25. February 7, 2007 letter Ferman to Roberts

26. March 6, 2007 letter Roberts to Ferman

27. December 6, 2007 e-mail Forzato to Gallen (1313)

28. December 18, 2007 e-mail Forzato to Gallen (1311)

29. December 20, 2007 e-mail Forzato to Gallen (1309)

30. December 22, 2007 e-mail Forzato to Gallen (1297)

31. December 21, 2007 e-mail Forzato to Gallen (1308)

32. December 22, 2007 e-mail Gallen to Forzato (1298)

33. December 24, 2007 e-mail Gallen to Vance (201)

34. December 21, 2007 e-mail Forzato to Gallen (205)

35. December 24, 2007 e-mail Gallen to Ferman et al (206)

36. PHRC Complaint No. 200706470, May 14, 2008

37. July 18, 2008 letter Ferman to Roberts (1816)

38. June 18, 2008 memo Forzato to Vance (314)

39. July 1, 2008 memo Forzato to File (1635)

40. July 3, 2008 memo Forzato to File (1639)

41. July 3, 2008 letter Kadelski to Gallen (1630)

42. July 8, 2008 memo Forzato to Gallen (1617)

43. June 20, 2008 3:51 p.m. memo Vance

44. May 14, 2008 Recommendation (2503)

45. June 20, 2008 memo Vance (1842)

46. PHRC Case No. 200706470 Amended Complaint

47. August 9, 2008 Times Herald Article

48. June 30, 2008 letter Ferman to Roberts

49. December 29, 2009 handwritten statement Abrahams

50. PHRC Case No. 200707344 Complaint

51. PHRC Case No. 200801366 Complaint

52. August 9, 2008 Times Herald Article marked Exhibit C

53. PHRC Case No. 200706470 Findings of the Investigation

54. PHRC Case No. 200707344 Findings of the Investigation

55. PHRC Case No. 200801366 Findings of the Investigation

56. 2007 Detectives' Activity Summary (1732)

57. Confidentiality within Detective units (1850)

58. Montgomery County District Attorney's Office Policy Manual (1)

59. March 20, 2003 Memo Vance to Roberts

60. September 9, 2008 Memo Boyle to File

61. September 29, 2008 letter Goodman to Santarone

62. December 4, 2007 memo Forzato to Gallen

**VI.**   <u>**Estimated time for trial**</u>:

Three days for the defense, seven days overall.

**VII.**   <u>**Special Comments:**</u>

Defendants expect to file an Omnibus Motion in Limine regarding "Declarations"

provided by Plaintiff during discovery, and purported expert testimony, absent an expert report

10

or compliance with the FRCP, as well as witnesses and documents identified by Plaintiff in his

own pre-trial memorandum.

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN

BY:   s/John P. Gonzales
JOHN P. GONZALES, ESQUIRE
ID#  PA71265
1845 Walnut Street
Philadelphia, PA 19103
(215) 575.2871
Email:  jpgonzales@mdwcg.com
Attorney for Defendants

DATE:  1/16/11
26/1851359.v1

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| REGINALD ROBERTS | : | Civil Action No: 09-4895 |
| | : | |
| v. | : | |
| | : | |
| RISA VETRI FERMAN, MONTGOMERY COUNTY, | : | |
| OSCAR VANCE, JR., SAMUEL GALLEN AND | : | |
| STEPHEN FORZATO | : | |

## <u>CERTIFICATE OF SERVICE</u>

I, JOHN P. GONZALES, ESQUIRE, do hereby certify that a true and correct copy of Defendants' Pre-Trial Memorandum, was electronically filed with the Court on January 16, 2012 and is available for viewing and downloading from the ECF System. All counsel of record was served via electronic notification.

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN

BY:    <u>s/John P. Gonzales</u>
JOHN P. GONZALES, ESQUIRE
ID#  PA71265
1845 Walnut Street
Philadelphia, PA 19103
(215) 575.2871
Email:  jpgonzales@mdwcg.com
Attorney for Defendants

26/1851359.v1