**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| REGINALD ROBERTS | : Civil Action No: 09-4895 |
| | : |
| v. | : |
| | : |
| RISA VETRI FERMAN, MONTGOMERY COUNTY, | : |
| OSCAR VANCE, JR., SAMUEL GALLEN AND | : |
| STEPHEN FORZATO | : |

## <u>ORDER</u>

AND NOW, this            day of                      , 2012, upon consideration of the Omnibus

Motion in Limine of Defendants to preclude trial testimony and/or exhibits, and any Response

thereto, it is hereby **ORDERED** and **DECREED** that Defendants' Motion is **GRANTED**.

Plaintiff is precluded from offering evidence or testimony related to:

    a.   Heart & Lung or Workmen's Compensation claims;

    b.   any medical diagnosis, or damages, beyond actual damages supported by

        documents provided by Plaintiff in discovery,

    c.   the "Declarations" or affidavits of Keith Sadler, Willie Richet, Roosevelt

        Poplar, John Caldwell, Sandra Coston or Wesley Sewell, including any

        testimony from them;

    d.   any reference to an alleged settlement offer made by Defendants, any mention

        of an alleged comment of a**hole" directed at plaintiff's counsel;

    e.   Video of a social gathering at the NET House; or

    f.   any evidence related to Unemployment Compensation.

    g.   Denial of work hours in Special Investigations Unit;

    h.   Alleged conversations with intake supervisor(s) at PHRC;

i.   Exhibits 3-7, 9-18, 24, 26, 32, 37-38, 40, 42-44, 47, 50-51, 55, 58, 60-67, 71-

73, 75, 78-79, 81-82; and Witnesses 2,4-8, 10, 13-17, 18, 22, 24-26, 28-35,

listed in Plaintiff's Pretrial Memorandum.

BY THE COURT:

_____
                                                              J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| REGINALD ROBERTS | :   Civil Action No: 09-4895 |
| | : |
| v. | : |
| | : |
| RISA VETRI FERMAN, MONTGOMERY COUNTY, | : |
| OSCAR VANCE, JR., SAMUEL GALLEN AND | : |
| STEPHEN FORZATO | : |

## DEFENDANTS' MOTION IN LIMINE TO PRECLUDE TRIAL TESTIMONY AND/OR EXHIBITS

Defendants, by and through his undersigned counsel, Marshall, Dennehey, Warner, Coleman & Goggin and John P. Gonzales, Esquire, file this Omnibus Motion in Limine to preclude trial testimony and/or exhibits, and in support thereof aver as follows:

1.   Plaintiff instituted this action by filing a Complaint on or about October 23, 2009 alleging violation of his civil rights, and pendent state tort claims.

2.   When this matter proceeds to trial, it is believed that Plaintiff will attempt to elicit testimony or present evidence related to a Heart & Lung Claim and/or Workmen's Compensation claim, neither of which is subject of the matter before the jury.

3.   Plaintiff should be precluded from presenting any evidence or eliciting any testimony regarding Heart & Lung or Workmen's Compensation claims including, but not limited to Exhibits 5-18, 72, 79 and 82 and Witnesses 2, 7, 10, 13-16, 18, 22, 24-25 and 28   listed in Plaintiff's Pretrial Memorandum.

4.   When this matter proceeds to trial, it is believed that Plaintiff will attempt to elicit testimony or present evidence of a medical diagnosis, absent an expert report, or any medical records in support.

5.   No records adduced during discovery, support Plaintiff's assertions regarding a medical diagnosis related to interaction with the Defendants, nor has he produced an expert report to support his allegation of injury.

6.   Plaintiff should be precluded from  presenting any evidence, or eliciting any testimony regarding, his allegations of  any medical diagnosis.

7.   Further, it is expected that Plaintiff will attempt to elicit testimony regarding damages, in the absence of having provided any response to defendants discovery and expert discovery.

8.   Any such testimony would also be hearsay, unsupported by an expert report or document produced during discovery, and inadmissible as a result.

9.   It is expected that Plaintiff will attempt to utilize "Declarations" of Willie G. Richet and Keith R. Sadler as expert reports, having failed to comply with the Federal Rules of Civil Procedure regarding experts, and despite the fact that neither purported expert has any firsthand knowledge of any relevant fact.

10.  It is expected that Plaintiff will attempt to utilize the "Declarations" of Sandra Coston, Wesley Sewell, John Caldwell, Roosevelt Poplar and O'Neill Abrams as exhibits despite the fact that none of these purported witnesses, by their own admission, has firsthand knowledge of facts relevant to this suit.

11.  It is expected that the Plaintiff will attempt to offer testimony at trial regarding an alleged "settlement offer" from the PHRC fact-finding hearing, in violation of F.R.E. 708.

12. It is expected that the Plaintiff will attempt to offer testimony regarding reference to Plaintiff or his counsel as an "a\*\*hole" during the deposition of a witness in this matter.

13. Such testimony is hearsay, unsupported by the transcript of the deposition in which it is alleged to have been said, and far more prejudicial than probative of any fact at issue in the instant matter.

14. Plaintiff has identified video of a social gathering at the NET House as an exhibit in this matter, and made repeated reference to comments about the "KKK" in the video.

15. Any testimony related to the video is hearsay, impermissible character evidence (speaker, John Caldwell) and more prejudicial than probative as it is undisputed that no defendant in the instant matter was aware of the comment, and no complaint of the 2004 incident was ever made.

16. It is expected that Plaintiff will attempt to elicit testimony or offer exhibits relative to an Unemployment Compensation claim, specifically, Plaintiff's Exhibits #42, 43 and 44.

17. This evidence is of no relevance to the remaining claims of Plaintiff's Complaint, and, if determined to be relevant, are more prejudicial than probative.

18. For the reasons more fully set forth in the Memorandum of Law, which is attached hereto and incorporated herein by reference, Plaintiff should be precluded from presenting any evidence or testimony regarding:

    a.   Heart & Lung or Workmen's Compensation claims;

b.   any medical diagnosis, or damages, beyond actual damages supported by

documents provided by Plaintiff in discovery,

c.   the "Declarations," affidavits or testimony from Keith Sadler, Willie

Richet, Roosevelt Poplar, John Caldwell, Sandra Coston or Wesley

Sewell;

d.   any reference to an alleged settlement offer made by Defendants, any

mention of an alleged comment of a**hole" directed at plaintiff's counsel;

e.   Video of a social gathering at the NET House; or

f.   any evidence related to Unemployment Compensation.

g.   Denial of work hours in Special Investigations Unit;

h.   Alleged conversations with intake supervisor(s) at PHRC;

i.   Exhibits 3-7, 9-18, 24, 26, 32, 37-38, 40, 42-44, 47, 50-51, 55, 58, 60-67,

71-73, 75, 78-79, 81-82; and Witnesses 2,4-8, 10, 13-17, 18, 22, 24-26,

28-35, listed in Plaintiff's Pretrial Memorandum.

WHEREFORE, Defendants respectfully request that this Honorable Court grant their

Motion in Limine, and enter the Order attached hereto.


                            MARSHALL, DENNEHEY, WARNER,
                            COLEMAN & GOGGIN


                   BY:     s/John P. Gonzales
                           JOHN P. GONZALES, ESQUIRE
                           ID#  PA71265
                           1845 Walnut Street
                           Philadelphia, PA 19103
                           (215) 575.2871
                           Email:  jpgonzales@mdwcg.com
                           Attorney for Defendants


DATE: 2/3/12
26/1848846.v1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| REGINALD ROBERTS | : | Civil Action No: 09-4895 |
| | : | |
| v. | : | |
| | : | |
| RISA VETRI FERMAN, MONTGOMERY COUNTY, | : | |
| OSCAR VANCE, JR., SAMUEL GALLEN AND | : | |
| STEPHEN FORZATO | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S OMNIBUS MOTION IN LIMINE**

**I.      PROCEDURAL AND FACTUAL BACKGROUND**

Plaintiff instituted this action by filing a Complaint on or about October 23, 2009,

alleging violation of his civil rights and pendent state tort claims regarding his termination from

employment as a detective for the Montgomery County District Attorney.  Extensive discovery

has taken place, and the matter is proceeding to trial on or about February 29, 2012.

As the facts of the case are well known to the Court, Defendants spare the Court another

recitation.  Consistent with the Federal Rules of Civil Procedure, and the Court's Scheduling

Order, Defendants file this Motion in Limine to address potential trial testimony and exhibits.

**II.     LEGAL ARGUMENT**

   **A.     Evidence & Testimony Related to Heart & Lung and/or Workmen's Compensation**

On January 23, 2012, the Court entered its Order at Docket No. 180:

> AND NOW, this 23rd day of January, 2012, upon consideration of
> the Defendants' Motion to Enforce Agreement of Counsel
> (Document No. 177) and the plaintiff's response, IT IS ORDERED
> that the motion is GRANTED.

> IT IS FURTHER ORDERED that, with the consent of the parties,
> all issues related to the plaintiff's Heart and Lung Benefits claim
> are referred to Chief Magistrate Judge Carol Sandra Moore Wells.

Despite entry of this Order, Plaintiff continues to pursue Heart & Lung and Workmen's' Compensation claims in the instant matter.  (See correspondence from Plaintiff's counsel attached hereto as exhibit "B" seeking a jury trial on Heart & Lung claims, recusal of the Trial Court and related demands).  Further, Plaintiff's pretrial memorandum (Docket No. 169) seeks the use of numerous exhibits and witnesses related solely to Heart & Lung and/or Workmen's Compensation.  It is believed and therefore averred that Plaintiff's purpose in so doing is to introduce irrelevant evidence to influence the jury to find for the Plaintiff on an improper basis in direct contravention of F.R.E. 401, 402 and 403.

Federal Rule of Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Rule 402 provides in relevant part, "[e]vidence which is not relevant is not admissible."

Federal Rule of Evidence  403, provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by the considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

As the advisory committee notes to Rule 403 state:

> Unfair prejudice means a tendency to suggest a decision on an improper basis, or to divert the jury's attention away from its duty of weighing the evidence impartially.

See also, United States v. Williams, 458 F.3d 312 (3d Cir. 2006); Balou v. Henri Studios, 656  F.2d 1147, 1155 (5th Cir. 1981) (Defining unfair prejudice as the tendency of testimony to result in a decision on an improper basis).  Plaintiff's Exhibits 5-18, 72, 79 and 82 and Witnesses 2, 7, 10, 13-16, 18, 22, 24-25 and 28, would support only Heart & Lung or Workmen's Compensation claims, claims that will not be before this jury.  Defendants sought the

cooperation of Plaintiff in adhering to the agreement made before the Court. (Correspondence from Defendants' counsel to Plaintiff's counsel, dated January 18, 2012, attached hereto as Exhibit "C").  Plaintiff refused, necessitating motions practice (Docket No. 177).  The Court granted Defendants' motion (Docket No. 180) and directed plaintiff during a telephone conference with all counsel (Docket No. 181) to adjust his exhibit and witness list, accordingly. Plaintiff has thus far refused to do so and, by his January 30, 2012 correspondence, made it clear that he has no intention to do so.

Evidence related to Heart & Lung or Workmen's Compensation, including requests for arbitration(to which both the Magistrate Judge and third Circuit have ruled Plaintiff was not entitled)  has no relevance to the remaining claims, would be presented in contempt of the Court's Orders in this matter, and would improperly influence the jury.  Defendants respectfully request that this evidence and/or testimony be precluded.   Further, they respectfully request, given the recalcitrance of plaintiff on this particular point, that Plaintiff and his counsel be directed that no mention be made of Heart & Lung, Worker's Compensation or Arbitration claims during trial, or suffer sanctions including declaration of a mistrial and award of Defendants' attorney's fees in preparation for trial.

   **B.**   **Plaintiff's "Declarations" of Roosevelt Poplar, John Caldwell, Oneill Abrams, Sandra Coston and Wesley Sewell: Fed.R.Evid. 401-403, 802-803**

The "Declarations" of Roosevelt Poplar, John Caldwell, Oneill Abrams, Sandra Coston and Willie Richet, are attached hereto as Exhibit "A".  Plaintiff produced these declarations through the course of litigation in this matter believing they support various of his claims.  With trial approaching, however, and given that the declarations are irrelevant, not based on firsthand knowledge, and hearsay, they, and the identified individuals, should be precluded from testifying at trial.

Federal Rule of Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Rule 402 provides in relevant part, "[e]vidence which is not relevant is not admissible."

Federal Rule of Evidence  403, provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by the considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

As the advisory committee notes to Rule 403 state:

> Unfair prejudice means a tendency to suggest a decision on an improper basis, or to divert the jury's attention away from its duty of weighing the evidence impartially.

See also, United States v. Williams, 458 F.3d 312 (3d Cir. 2006); Balou v. Henri Studios, 656  F.2d 1147, 1155 (5th Cir. 1981) (Defining unfair prejudice as the tendency of testimony to result in a decision on an improper basis).  Finally, each of the declarations consists of, at best, second hand information, in violation of the Hearsay Rule (FRCP 801 - 802) and not meeting any of the exceptions thereto (FRCP 803).

A brief description of each of the declarations and its purported author, is appropriate:

1. Oneill Abrams – Convicted drug dealer Oneill Abrams' statement is offered to establish that the placard which Reginald Roberts took from his former headquarters now belongs to Roberts.  As it appears undisputed that the placard was on a truck that has been forfeited to Montgomery County, it is, and has remained throughout this litigation, the property of the County.   Abrams offers no first-hand knowledge of any matter in dispute in this litigation.  It is asked that Plaintiff be required to produce Mr. Abrams should he wish to have him testify, and that he be subject to voir dire before being permitted to testify before the jury.

2. Sandra Coston – Ms. Coston is the mother of a convicted sex offender, who raped a child.  Her son was arrested by Lieutenant

4

Forzato.  Ms. Coston is the Pastor of the Deliverance Evangelical Temple in Norristown, believed to be Plaintiff Reginald Robert's church. As Plaintiff Roberts told Chief Vance that he had shown the pictures, including pictures of Lieutenant Forzato's son, to members of his church, it is irrelevant whether Roberts actually did so.  To have Ms. Coston testify that Roberts did not do so, in the face of his own testimony that this was exactly the impression he created, would be irrelevant for the jury's consideration.  Further, it is believed that the real purpose behind both the "declaration" and the proposed testimony, is to have Ms. Coston offer impermissible character evidence of the Plaintiff.

3.   John Caldwell – John Caldwell is a former police officer in Upper Merion Township.  His affidavit contains only hearsay relative to a heart and lung claim, and statements by Plaintiff's attorney, which are not the subject of plaintiff's remaining claims.

4.   Roosevelt Poplar – Mr. Poplar is a Vice President of the PA State Lodge of the Fraternal Order of Police.  His affidavit contains only hearsay relative to a heart and lung claim, and statements by Plaintiff's attorney, which are not the subject of plaintiff's remaining claims.  Further, it is believed that the real purpose behind both the "declaration" and the proposed testimony, is to have Mr. Poplar offer impermissible character evidence of the Plaintiff.

5.   Wesley Sewell – While not mentioned in the declaration plaintiff has provided, Reginald Roberts was present at the detention of Wesley Sewell in May of 2000, and it was Roberts who yelled to other detectives present that Sewell had a gun.  Mr. Sewell was apparently present in the home of drug dealer Raymond Bell, whom Plaintiff Roberts had come to arrest.  While the declaration alleges excessive force by then-Detective Forzato, this is not an excessive force case, and Sewell is not a party.  Further, it would appear undisputed that Mr. Roberts never reported an alleged act of excessive force that he now claims he was present for, and upon information and belief, Mr. Sewell never filed a complaint of suit, related to the incident he now describes.

(Exhibit "A").  None of these purported declarations has been notarized or otherwise authenticated, and all include only inadmissible, non-relevant, hearsay.  These statements, and their authors, should be precluded at time of trial as not relevant to the remaining claims, hearsay and/or impermissible character evidence.

C.     **Plaintiff's "Declarations" of Willie Richet and Keith Sadler:**
       **Fed.R.Evid. 401-402, Daubert**

While each of the arguments at Section "A", above is applicable to the declarations of

Willie Richet and Keith Sadler, it would appear that Plaintiff attempts to interject some form of

an expert report, having failed to comply with the Federal Rules in this regard. As neither was

produced until after the discovery deadline, and neither comport with the Federal Rules, they

should be excluded on this basis.  Be that as it may, and in an abundance of caution, Defendants

address both as potential experts, and seek their exclusion also under <u>Daubert</u> and related case

law.

Pursuant to Federal Rule of Civil Procedure 16 and Federal Rule of Civil Procedure 26,

the Court issued a Scheduling Order regarding discovery, Motions, Pre-Trial Memoranda, and

other significant dates concerning the conduct of this litigation.  The deadline for discovery in

this matter has long passed, and plaintiff has sought no extension to conduct expert discovery.

Plaintiff has not identified a law enforcement expert who will testify as to any matter relevant to

any remaining claim, in fact has offered nothing regarding law enforcement procedures beyond

the self-serving allegations of his deposition.

Federal Rule of Civil Procedure 26(a)(2) states that parties are required to disclose, to the

other parties in the litigation, the identity of any person who may be used at Trial to present

evidence in accordance with Federal Rules of Evidence 702, 703 and 705.  Disclosure of such

information is required to be made at least ninety (90) days before the Trial date.[1]  F.R.C.P.

26(a)(2)(c).

---

[1] While Plaintiff provided both declarations greater than ninety days before trial, he has neither
authenticated the purported declarations, not identified either declarant as an expert witness.  To
date, plaintiff has never responded to the expert interrogatories of the defendants (nor to the
interrogatories or requests for production, all of which were sent to Plaintiff April 12, 2010.
(Docket #24)

The failure of the plaintiff to disclose experts who will testify at Trial has created an undue burden on defendant in preparation for Trial.  Absent identification of such expert witnesses, and the opportunity to depose those witnesses, plaintiff should be barred from introducing any testimony regarding liability.  Further, witnesses identified by the plaintiff should be precluded from testifying as to any opinion regarding law enforcement practices, as such testimony may be beyond their expertise and knowledge.   As Plaintiff has not provided that expertise and knowledge, defendants are left with only their personal knowledge of these two individuals as being reputable gentlemen, but not necessarily "experts".  Plaintiff is left, therefore, to offer their opinions as non-expert witnesses.

A non-expert witness may testify only from his or her personal knowledge, "It is true that 'personal knowledge' includes inferences—all knowledge is inferential—and therefore, opinions…but the inferences and opinions must be grounded in observation or other firsthand personal experience.  They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience."  Mattioli v. Media News Group, 1999 U.S. Dist. Lexis 14510 (E.D. Pa., Sept. 2, 1999).

Generally, a lay witness may not offer opinion testimony.  FRE 701.  The rule is, of course, relaxed when the lay witness testifies as to opinions and inferences:

> 1.  Based on a rational perception,
>
> 2.  Which is useful in providing an understanding of the testimony of the witness or determination of a factual issue, and;
>
> 3.  When they are not based on any type of specialized knowledge such as scientific or technical knowledge.

FRE 701; See also: Eichorn v. AT&T Corp., 484 F.3d 644  (3d Cir. 2007).

Under the Federal Rules of Evidence, the trial judge acts as a "gatekeeper" to ensure that expert testimony or evidence is both reliable and relevant.  Daubert v. Merrell Dow

Pharmaceuticals, Inc. 509 U.S. 579, 589 (1983)  The Federal Rules of Evidence "embody a strong and undeniable preference" for the admission of evidence which potentially could assist the trier of fact.  Kannankeril v. Terminix Int'l, Inc., 128 F.3d 802, 805 (3d Cir. 1997).  Federal Rule of Evidence 702 provides a three-part test regarding the admissibility or expert testimony. The Rule requires that: (1) the proffered witness must be an expert; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact. Fed R. Evid. 702. *See also:* In re Paoli Yard PCB Litig., 35 F.3d 717 (3d Cir. 1994).

In assessing the admissibility of expert testimony, the primary focus of the federal courts is upon Rule 702's requirement that the testimony "assist the trier of fact to understand the evidence or to determine a fact in issue." Id. The type of testimony proposed by Plaintiff, regarding law enforcement procedures relative to confidentiality of narcotics units, and dissemination of such confidential information beyond law enforcement is, of course, reserved for experts only, as defined and governed by FRE 702.

The United States Supreme Court extended the Daubert factors to the testimony of other experts who are not scientists.  See, Kumho Tire Company, Ltd. v. Carmichael, 526 U.S. 137, 143 L. Ed. 2nd 238, 119 S. Ct. 1167 (1999). In Kumho, the Supreme Court determined that the Daubert gate-keeping function of a District Court Judge is not limited strictly to scientific knowledge.  Federal Rule of Evidence 702 imposes a special obligation upon a trial judge to ensure that all expert testimony is not only relevant, but reliable.  "Rule 702 does not distinguish between 'scientific' knowledge and 'technical' or 'other specialized' knowledge, but makes clear that any such knowledge might become the subject of expert testimony." Id. Hence, the Court may consider one or more of the more specific factors mentioned in Daubert when determining

the reliability of any expert testimony. See also, <u>Roberson et al v. City of Philadelphia</u>, 2001 U.S.

Dist. LEXIS 2163 (E.D. Pa., 2001) (police practices experts).

     To the extent Plaintiff's witnesses propose to testify, not as to facts within their personal

knowledge, but as to law enforcement procedures, that testimony should be precluded.  Clearly,

anything beyond personal observation goes beyond admissible opinion testimony, as it is a

conclusion drawn from facts.  "There is uniformity among the Courts that the testimony of

witnesses…is admissible if predicated upon concrete facts within their own observation and

recollections that it is facts perceived from their own senses, as distinguished from their opinions

or conclusions drawn from such facts."  <u>Wood v. Developers Diversified Realty Corp</u>., 2006

U.S. Dist. Lexis 6886 (E.D. Pa. 2006) quoting <u>Randolph v. Collectramatic, Inc.</u>, 590 F. 2d 844,

847-48, (10th Cir., 1979).  The <u>Randolph</u> Court further defined the scope of opinion testimony

by lay witnesses by limiting it to only those things which are within the "realm of common

experience," and prohibiting lay witnesses to testify as to opinions which "required special skill

and knowledge of expert witnesses."  See, <u>Randolph</u>, 590 F.2d at 846.

     In this case, plaintiff's witnesses fail to meet the requirements of Rule 702:

> The first requirement under Rule 702 is that a witness "proffered to
> testify to specialized knowledge must be an expert." <u>Surace v
> Caterpillar Inc.</u>, 111 F.3d 1039, 1055 (1997). <u>See</u> <u>also</u> <u>In re Unisys
> Sav. Plan Admin.</u>, 1173 F. 3d 145, 156 (3d Cir. 1999).  While there
> is no set litmus test to qualify as an expert, there must be some
> evidence to suggest that the proposed expert possess sufficient
> knowledge of the subject matter, either through training or
> experience, to testify as an expert. <u>Surace</u>, 111 F. 3d at 1055.

<u>United States v Fisher</u>, 2002 U.S. Dist. LEXIS 22385 (E.D. Pa., Nov., 19, 2002).

Plaintiff offers no such proof and, on the literal eve of trial, is not permitted to do so now.

     Further, a limiting jury instruction will not cure the prejudicial effect of plaintiff's witness

testimony as to their opinions.  <u>Burton v. United States</u>, 389 U.S. 818 (1968) (where the Court

barred the use of limiting instructions due to the grave prejudicial value of the evidence, even with a limiting instruction.) As there is no expert testimony regarding liability, beyond the self-serving statements of Plaintiff's pleadings and deposition, a Jury could be incorrectly and impermissibly misled to improper conclusions.

Moreover, in determining whether challenged testimony of a witness is relevant and therefore, admissible, the Court must weigh its probative value against any prejudicial effect under F.R.E. 403. In weighing the prejudicial and probative values of this type of evidence, the Court should consider that the lay witness' testimony to any facts, even with a limiting instruction, would severely prejudice the defendants. The line between first-hand knowledge, and hearsay, would be easily crossed, to Defendant's irreparable harm.

Finally, the declarations themselves contain numerous statements that neither a lay witness, nor an expert, would be qualified to make, for a jury's ears. For example, Mr. Sadler admits that he lacks personal knowledge in that he declares that: "I know Reginald A Roberts but have not worked with him…" (Sadler Declaration at 2.) Both Sadler and Richet admit to never having been in the NET House (Sadler at 5,Richet at 9), so they have no first-hand knowledge of the position of the objects (photos, refrigerator, plaintiff's office) upon which they attempt to offer an opinion. Further, the "pictures" that these two witnesses were shown are not identified in any way, such that their conclusions as to the propriety of showing them to civilians outside of law enforcement, cannot be determined. [2] Finally, both Sadler and Richet's opinions regarding no reason why photographs of the inside of an indisputably confidential location could not be disseminated outside of law enforcement flies in the face of both common sense, and the confidentiality policy that Mr. Roberts admits to having received. More importantly, it is not up

---

[2] Given that the Plaintiff has turned over different pictures, and different numbers of pictures, to counsel and his former supervisors on different occasions, no assumptions can be made as to what he chose to show to Mssrs. Sadler and Richet.

to Mr. Richet and Mr. Sadler to make this determination.  It is solely within the province of the jury.

Finally it is undisputed that Mr. Sadler never worked with Mr. Roberts, (Sadler Declaration at 2) and has never been identified as an expert, such that his statement at paragraph #7 of his declaration, "I have found Roberts to always use the common sense expected of a police officer.", is impermissible character evidence, that must be precluded.

### D.    Plaintiff's Medical Testimony

To the extent plaintiff proposes to present any medical testimony regarding any alleged damages caused by Defendants, that evidence should be precluded.  Defendants include Plaintiff's reference to being "near death" (plaintiff's pretrial memorandum at 9), as there has been no evidence to so such suggest.  To the contrary, Plaintiff has claimed that he was able, and required to travel to doctor's appointments, and has offered no evidence of a single hospital admission.

Pursuant to Federal Rule of Civil Procedure 16 and Federal Rule of Civil Procedure 26, this Court issued a Scheduling Order regarding discovery, Motions, Pre-Trial Memoranda, and other significant dates concerning the conduct of this litigation.  The deadline for discovery in this matter has long passed, and plaintiff has sought no extension to conduct expert discovery. Plaintiff has not identified a medical expert who will testify as to any injuries, and produced no medical reports to support any allegations as to the nature of his purported injuries, beyond the self-serving allegations of his deposition.

Federal Rule of Civil Procedure 26(a)(2) states that parties are required to disclose, to the other parties in the litigation, the identity of any person who may be used at Trial to present evidence in accordance with Federal Rules of Evidence 702, 703 and 705.  Disclosure of such

information is required to be made at least ninety (90) days before the Trial date.[3]  F.R.C.P.

26(a)(2)(c).  Plaintiff has not identified any medical experts who will testify to his purported

injuries, and the medical records obtained in discovery do not support allegations of an injury.

The failure of the plaintiff to disclose experts who will testify at Trial has created an

undue burden on defendant in preparation for Trial.  Absent identification of such expert

witnesses, and the opportunity to depose those witnesses, plaintiff should be barred from

introducing any testimony regarding medical diagnosis.  Further, lay witnesses identified by the

plaintiff should be precluded from testifying as to any opinion regarding a medical diagnosis, as

such testimony is beyond their expertise and knowledge.

A non-expert witness may testify only from his or her personal knowledge, "It is true that

'personal knowledge' includes inferences—all knowledge is inferential—and therefore,

opinions…but the inferences and opinions must be grounded in observation or other firsthand

personal experience.  They must not be flights of fancy, speculations, hunches, intuitions, or

rumors about matters remote from that experience."  Mattioli v. Media News Group, 1999 U.S.

Dist. Lexis 14510 (E.D. Pa., Sept. 2, 1999).

Generally, a lay witness may not offer opinion testimony.  FRE 701.  The rule is, of

course, relaxed when the lay witness testifies as to opinions and inferences:

> 1.  Based on a rational perception,
>
> 2.  Which is useful in providing an understanding of the testimony
> of the witness or determination of a factual issue, and;
>
> 3.  When they are not based on any type of specialized knowledge
> such as scientific or technical knowledge.

FRE 701; See also: Eichorn v. AT&T Corp., 484 F.3d 644  (3d Cir. 2007).

---

[3] This matter is scheduled for trial February 29, 2012.

Under the Federal Rules of Evidence, the trial judge acts as a "gatekeeper" to ensure that expert testimony or evidence is both reliable and relevant.  Daubert v. Merrell Dow Pharmaceuticals, Inc. 509 U.S. 579, 589 (1983)  The Federal Rules of Evidence "embody a strong and undeniable preference" for the admission of evidence which potentially could assist the trier of fact.  Kannankeril v. Terminix Int'l, Inc., 128 F.3d 802, 805 (3d Cir. 1997).  Federal Rule of Evidence 702 provides a three-part test regarding the admissibility or expert testimony.  The Rule requires that: (1) the proffered witness must be an expert; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact.  Fed R. Evid. 702. *See also:*  In re Paoli Yard PCB Litig., 35 F.3d 717 (3d Cir. 1994).

In assessing the admissibility of expert testimony, the primary focus of the federal courts is upon Rule 702's requirement that the testimony "assist the trier of fact to understand the evidence or to determine a fact in issue." Id. The type of testimony proposed by Plaintiff, regarding technical or specialized knowledge is, of course, reserved for experts only, as defined and governed by FRE 702.  The United States Supreme Court extended the Daubert factors to the testimony of other experts who are not scientists.  See, Kumho Tire Company, Ltd. v. Carmichael, 526 U.S. 137, 143 L. Ed. 2nd 238, 119 S. Ct. 1167 (1999). In Kumho, the Supreme Court determined that the Daubert gate-keeping function of a District Court Judge is not limited strictly to scientific knowledge.  Federal Rule of Evidence 702 imposes a special obligation upon a trial judge to ensure that all expert testimony is not only relevant, but reliable.  "Rule 702 does not distinguish between 'scientific' knowledge and 'technical' or 'other specialized' knowledge, but makes clear that any such knowledge might become the subject of expert testimony."  Id. Hence, the Court may consider one or more of the more specific factors mentioned in Daubert

13

when determining the reliability of any expert testimony. See also, <u>Roberson et al v. City of Philadelphia</u>, 2001 U.S. Dist. LEXIS 2163 (E.D. Pa., 2001) (police practices experts).

To the extent Plaintiff's witnesses propose to testify, not as to facts within their personal knowledge, but as to a medical diagnosis, that testimony should be precluded.  Clearly, anything beyond personal observation goes beyond admissible opinion testimony, as it is a conclusion drawn from facts.  "There is uniformity among the Courts that the testimony of witnesses…is admissible if predicated upon concrete facts within their own observation and recollections that it is facts perceived from their own senses, as distinguished from their opinions or conclusions drawn from such facts." <u>Wood v. Developers Diversified Realty Corp</u>., 2006 U.S. Dist. Lexis 6886 (E.D. Pa. 2006) quoting <u>Randolph v. Collectramatic, Inc.</u>, 590 F. 2d 844, 847-48, (10th Cir., 1979).  The <u>Randolph</u> Court further defined the scope of opinion testimony by lay witnesses by limiting it to only those things which are within the "realm of common experience," and prohibiting lay witnesses to testify as to opinions which "required special skill and knowledge of expert witnesses."  See<u>, Randolph</u>, 590 F.2d at 846.

In this case, plaintiff and his witnesses are not doctors, and may not testify as to any medical opinions regarding alleged injuries to Plaintiff, or any other medical diagnosis that would require a doctor's assessment:

> The first requirement under Rule 702 is that a witness "proffered to testify to specialized knowledge must be an expert." <u>Surace v Caterpillar Inc.</u>, 111 F.3d 1039, 1055 (1997). <u>See</u> <u>also</u> <u>In re Unisys Sav. Plan Admin.</u>, 1173 F. 3d 145, 156 (3d Cir. 1999).  While there is no set litmus test to qualify as an expert, there must be some evidence to suggest that the proposed expert possess sufficient knowledge of the subject matter, either through training or experience, to testify as an expert. <u>Surace</u>, 111 F. 3d at 1055.

<u>United States v Fisher</u>, 2002 U.S. Dist. LEXIS 22385 (E.D. Pa., Nov., 19, 2002)

Plaintiff's testimony must be limited to non-opinion testimony when dealing with medical issues.  Further, a limiting jury instruction will not cure the prejudicial effect of plaintiff's witness testimony as to her opinions regarding injuries.  Burton v. United States, 389 U.S. 818 (1968) (where the Court barred the use of limiting instructions due to the grave prejudicial value of the evidence, even with a limiting instruction.) As there is no expert testimony regarding injuries to the Plaintiff, beyond the self-serving statements of Plaintiff's pleadings and deposition, a Jury could be incorrectly and impermissibly misled to improper conclusions.

Moreover, in determining whether challenged testimony of a witness is relevant and therefore, admissible, the Court must weigh its probative value against any prejudicial effect under F.R.E. 403.  In weighing the prejudicial and probative values of this type of evidence, the Court should consider that the lay witness' testimony to any matter of a medical nature, even with a limiting instruction, has no probative value because the witness is not qualified to express medical opinions regarding injuries.  Testimony by Plaintiff's witnesses, would lend credence to Plaintiff's theories, because Plaintiff's witnesses were, or may have been, present day to day, with the Plaintiff.   The line between first-hand knowledge, and hearsay, would be easily crossed, to Defendant's irreparable harm.

Finally, plaintiff cannot lay a proper foundation for lay opinion testimony regarding highly specialized medical opinions, and instead creates a situation which is highly prejudicial to the opposing party.  As the Advisory Committee notes to Rule 403 state:

> Unfair prejudice means a tendency to suggest a decision on an
> improper basis, or to divert the jury's attention away from its duty
> of weighing the evidence impartially.  See also, United States v.
> Williams, 458 F.3d 312 (3rd Cir., 2006).  See also, Ballu v. Henri
> Studios, 656 F.2d 1147, 1155 (5th Cir., 1981) (defining unfair

prejudice as the tendency of testimony to result in the decision on
an improper basis).

For these reasons, even a limiting instruction will not be sufficient to allay the prejudicial
effect of such opinion testimony, and therefore, any lay opinion testimony regarding medical
diagnosis would be gravely prejudicial, non-probative and should be precluded.  Defendant
respectfully requests that plaintiff's counsel be instructed to instruct the witnesses not to attempt
to testify as to an anxiety disorder, physical ailment or other diagnosis.

### E.     Offer to Settle at PHRC Fact-finding Conference

Plaintiff has made repeated reference to an alleged offer to settle this matter at the PHRC
Fact-finding Conference.  As an example, Plaintiff avers in response to Defendants' Motion for
Summary Judgment: "The fact-finding conference starts and during the conference the County
offers Roberts three months of paid overtime and the unit of his choice as remedies to resolve his
PHRC Complaint; Roberts rejects the offer."  (Plaintiff's Brief at 11).

Setting aside that this averment is false, as no such offer was ever made, it would also be
in violation of F.R.E. 408 to admit such evidence.  The Rule provides, in relevant part:

Rule 408.  Compromise Offers and Negotiations

(a) Prohibited Uses. Evidence of the following is not admissible--
on behalf of any party--either to prove or disprove the validity or
amount of a disputed claim or to impeach by a prior inconsistent
statement or a contradiction:

   (1) furnishing, promising, or offering--or accepting, promising to
accept, or offering to accept--a valuable consideration in
compromising or attempting to compromise the claim; and

   (2) conduct or a statement made during compromise negotiations
about the claim--...

There has been no evidence that Defendants made any offer to compromise, as Plaintiff
himself has testified that such a suggestion was made by the PHRC, not by the Defendants,

making such an alleged offer hearsay, as well, in violation of Rule 802.  While the veracity of

Plaintiff's claim of an offer to settle is a disputed matter to begin with, the fact remains that, even

if such an offer was made, it would be inadmissible evidence under the Rule, and should be

precluded.  Plaintiff has only one purpose in attempting to offer such evidence, to argue to the

jury that an offer to settle a disputed claim is an admission of liability, the exact wrong Rule 408

is intended to prohibit.

### F.       <u>Reference to Plaintiff's counsel as, an "a\*\*hole"</u>

It has been the contention of Plaintiff's counsel, that Lieutenant Stephen Forzato referred

to Mr. Puricelli as an "a\*\*hole" during a break in the Lieutenant's deposition, while Defendants'

counsel was still wearing a microphone.  Specifically, at page 9 of Lieutenant Forzato's second

day of deposition testimony, Plaintiff's counsel inquires as to whether Forzato whispered to his

attorney that Mr. Puricelli is, or was, an "a\*\*hole".  Lieutenant Forzato has testified that he did

not remember doing so, but to the extent Mr. Puricelli took offense to being called an "a\*\*hole"

by anyone, and on the chance that Lieutenant Forzato was a person who had done so, at page 62

of his deposition, he apologized.  It is believed that Plaintiff's counsel will attempt to elicit

testimony that Lieutenant Forzato referred to Brian Puricelli as an "a\*\*hole".  Defendants object

to any such testimony and ask that it be precluded.

First, and foremost, the witness has testified under oath that he did not recall making such

a statement. (Forzato Dep. at 9)  A review of the entire audio recording by Defendants' counsel

and their staff did not reveal any such utterance, let alone identify whom at the table, including

Plaintiff himself, the court reporter, videographer or Defendants' counsel, may have referred to

Mr. Puricelli as an "a\*\*hole", if indeed anyone did.   While such a descriptor being used to

describe the Plaintiff may have dubious relevance to the remaining claims of the Complaint, if

used to describe Attorney Puricelli, it would have no relevance under F.R.E. 402, and would

therefore be inadmissible. Further, to the extent it is considered relevant, any testimony in this

regard should be excluded as overly prejudicial in violation of F.R.E. 403 which reads, in

pertinent part:

> Although relevant, evidence may be excluded if its probative value
> is substantially outweighed by the danger of unfair prejudice,
> confusion of the issues, or misleading the jury, or by the
> considerations of undue delay, waste of time, or needless
> presentation of cumulative evidence.

Further, as the allegedly offending party has not been identified, and it remains equally

possible that, if it was said at all, the individual referring to Mr. Puricelli as an "a**hole" is not a

party to this matter, it represents impermissible hearsay as well, in violation of F.R.E. 802.

### G. Caldwell Video

Plaintiff has offered a videotape of a social gathering at the NET House, as an Exhibit for

trial. Plaintiff could offer the video only for an improper purpose, as the evidence of record is

that no Defendant was ever aware such a comment was made at the social gathering. Plaintiff

attempts to ring a bell that cannot be un-rung for the jury by making the "KKK" reference, each

time he references the video as evidence that Detectives allow themselves to be photographed.

For instance, in response to Defendants" Motion for Summary Judgment, Plaintiff averred: "In

fact, in one video from a party the full face and body of Defendant Stephen Forzato is observed.

Forzato did not ever attempt to stop the video from being taken or even try and hide his

appearance. On the videotape a "KKK" reference is also made during the party." (Plaintiff's

Brief at 2). The attempt is as transparent, as it is improper, under Rule 403. While the absurdity

of Plaintiff's suggestion that undercover officers should never allow themselves to be

photographed, even when only other undercover officers is present, is apparent, Plaintiff has the

ability to ask the Detectives who will serve as witnesses if they have ever allowed themselves to

be photographed, without resort to the sensationalistic video, or reference to the overly

prejudicial evidence in testimony.  It is not, and never has been, Defendants' contention that NET

Detectives should never be photographed, but rather, that NET Detectives should expect that

photographs of them, and their children, will not be disseminated in the non-law enforcement

public,

Further, as Plaintiff is well aware, the "KKK" comment was made by his personal friend,

John Caldwell and, while Lt. Forzato was also visible in the frame along with the Plaintiff,[4]  he

was not in a position to hear, and did not hear, the comment, an undisputable fact.  Plaintiff

himself testified under oath that he had never heard Stephen Forzato make a racially offensive

remark.  (MSJ Bates Number 51).  Knowing all this, knowing full well Stephen Forzato has

never made a racially offensive remark, knowing that Plaintiff himself is present laughing at the

"KKK" reference, he nonetheless attempts to attribute this conduct to Lt. Forzato, not to

Caldwell.  [5] Plaintiff also cannot dispute the fact that he never reported the comment as being

racially motivated, and produced the video himself, at the deposition of Stephen Forzato, and

never before.  Even if this conduct was attributable to a named defendant, it would be

insufficient to support Plaintiff's racial discrimination claim.  Woodard v. PHB Diecasting, 255

Fed.Appx. 608, 609 (3d Cir. 2007) (Summary judgment granted despite the fact that burning

cross and KKK signs drawn on restroom were not removed for three months after reported by

Plaintiff – insufficient to state a claim for hostile work environment); Morgan v. Valenti Mid-

Atlantic Management, No. Civ. A. 01-134, 2001 WL 1735260 (E.D. Pa. Dec. 14, 2001)

(Summary Judgment granted despite co-worker reference to Plaintiff as a ni**er and employer

---

[4] Lieutenant Forzato is actually on the far side of the room in the video, talking with the Assistant
District Attorney for Narcotics, and clearly not part of the conversation involving Mr. Caldwell.
[5] In fact, it was Forzato who said he would not be friends with anyone who would make such a
remark.  (Forzato deposition at 152).

statement that he would not hire Jamaicans).  The video, and any reference to Mr. Caldwell's "KKK" comment, should be precluded.

###### H.    Unemployment Compensation Proceedings (Plaintiff's Exhibits #42-44)

Plaintiff has included Exhibits 42-44 in his pre-trial memorandum, consisting of paperwork and correspondence relative to an application and hearings for unemployment compensation.  "The decision to admit evidence of administrative decisions in federal anti-discrimination suits is committed to the sound discretion of the trial court." Flick v Aurora Equipment Co., 2004 U.S. Dist. LEXIS 4304 (E.D. Pa. Jan. 16, 2004), citing: Walton v Eaton Corp., 563 F.2d 66, 75 (3d Cir. 1977).  As it is undisputed that Plaintiff received these benefits, they are of no relevance to any remaining claim.  Further, the documents are offered by Plaintiff for an improper purpose- to suggest that Defendants manufactured a pretextual reason for his termination, after the fact, in the absence of any such testimony in support in the record.  Plaintiff attempts to do so through Unemployment Compensation applications and correspondence related thereto,  and the e-mails of the District Attorney's Chief of Staff, Stephen Latzer, who is neither a Defendant in this matter, nor involved in the decision to terminate Plaintiff's employment, unassailable facts.  These e-mails are attorney-client privileged, and work product in ongoing litigation, that reveal strategy in responding to a lawsuit and should be precluded on this basis as well.

###### 1.    Relevance, Unfair Prejudice

Federal Rule of Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Rule 402 provides in relevant part, "[e]vidence which is not relevant is not admissible."

Federal Rule of Evidence  403, provides:

> Although relevant, evidence may be excluded if its probative value
> is substantially outweighed by the danger of unfair prejudice,
> confusion of the issues, or misleading the jury, or by the
> considerations of undue delay, waste of time, or needless
> presentation of cumulative evidence.

As the advisory committee notes to Rule 403 state:

> Unfair prejudice means a tendency to suggest a decision on an
> improper basis, or to divert the jury's attention away from its duty
> of weighing the evidence impartially.

See also, United States v. Williams, 458 F.3d 312 (3d Cir. 2006); Balou v. Henri Studios, 656  F.2d 1147,

1155 (5th Cir. 1981) (Defining unfair prejudice as the tendency of testimony to result in a decision on an

improper basis).  Evidence of Unemployment Compensation proceedings are irrelevant to the remaining

claims of Plaintiff's Complaint.  Were the Court to find them relevant, they are, none the less, more

prejudicial than probative, as the standards for unemployment compensation are significantly different

than the standards for a Title VII claim.  See: Baur v M&M/mars, C.A. No. 99-cv-606, 2001 U.S. Dist.

LEXIS 24162 (E.D. Pa. Oct. 22, 2001).  Citing Baur, the Flick Court held:

> [A]n unemployment hearing decision should normally not be
> admitted in a federal discrimination suit largely because the [sic]
> an unemployment compensation decision determines whether an
> employee is entitled to benefits, not whether the employer
> discharged the employee in violation of anti-discrimination
> statutes…In addition, the Court noted that the standard of proof is
> different in an unemployment compensation than in a federal anti-
> discrimination suit…Accordingly, the court found that the danger
> of unfair prejudice substantially outweighed the probative value of
> the evidence.

Flick, at *11.  See also: Kelley v TYK Refactories Co., 860 F.2d 1188 (3d Cir. 1998).

Other Courts within the Circuit have come to the same conclusion. See: Finnegan v Ross

Township, 2008 U.S. Dist. LEXIS 73510 (W.D. Pa. Sep. 25, 2008), Kirby v J.C. Penney Corp.,

2009 U.S. Dist. LEXIS 101805 (W.D. Pa. Oct. 29, 2009).

21

2.    Attorney Work Product, Attorney Client Privilege

As the Federal Rules provide:

> Ordinarily, a party may not discover documents and tangible things
> that are prepared in anticipation of litigation or for trial by or for
> another party or its representative (including the other party's
> attorney, consultant, surety, indemnitor, insurer, or agent).

F.R.C.P. 26 (b)(3).

A party may still obtain these documents if they are able to show that they have

"substantial need for the materials to prepare its case and cannot, without undue hardship, obtain

the substantial equivalent by other means." Id.  Even in such a case, however, the Court must

still withhold the documents if they would disclose "mental impressions, conclusions, opinions,

or legal theory of an attorney of other representative of a party concerning the lawsuit."

Hickman v. Taylor, 329 U.S. 495 (1947), See also Coregis Ins. Co. v. Kafrissen, 2003 U.S. App.

LEXIS 1806 at * 5 (3d Cir. Jan. 27, 2003).

As the Circuit Court has held, the work product doctrine "generally afford[s] near

absolute protection from discovery." In Re: Ford Motor Company, 110 F.3d 954, 962 n.7 (3d

Cir. 1997).  The doctrine protects not just matters in litigation, bur materials generated or

"prepared in the course of preparation for possible litigation." Holmes v. Pension Plan of

Bethlehem Steel Corp., 213 F.3d 124, 138 (3d Cir. 2000) citing Haines v. Liggett Group, Inc.,

975 F.2d 81, 94 (3d Cir. 1982) (Further citation omitted).  The rules provide for protection of

documents prepared, not just by an attorney, but by the party's representative including

consultants, sureties, indemnitors, insurers or agents.  F.R.C.P. 26(b)(3).

In applying the work product doctrine, Courts consider the nature of the document, as

well as the circumstances surrounding its creation and distribution. Martin v. Bally's Park Place

Hotel and Casino, 983 F.2d 1252, 1260 (3d Cir. 1993).  Considering these facts, the Court then

determines whether "the document can be fairly said to have been prepared or obtained because of the prospect of litigation." In Re: Grand Jury Proceedings (FMC Corp.), 604 F.2d 798, 803 (3d Cir. 1979).

In the matter at bar, the e-mail correspondence from Steven Latzer contain defense strategy regarding not fighting Plaintiff's unemployment benefits application, and references the source of that strategy, "Counsel for the District Attorney's Office strongly advises the County not to challenge Mr. Roberts pending unemployment compensation claim." (Plaintiff's exhibit #44)(emphasis in original).

> The court considers whether testimony by Gold regarding the 1997, 1998, and 2000 Loans implicates the attorney-client privilege. Because Christopher's remaining claims arise under Pennsylvania law, the court applies Pennsylvania privilege law. See Montgomery County v. MicroVote Corp., 175 F.3d 296, 301 (3d Cir. 1999). Under Pennsylvania law: "In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case the privilege is waived upon the trial by the client." 42 Pa. C.S.A. § 5928. For the attorney-client privilege to apply, "[t]he communications must be for the purpose of obtaining legal advice." In re Ford Motor Co., 110 F.3d 954, 965 (3d Cir. 1997). …Gold's impressions and communications regarding the loans constitute privileged work product and legal advice to First Mutual. Any testimony by Gold regarding her review of the 1997, 1998, and 2000 Loans, and subsequent legal advice, is barred by the attorney-client privilege. Defendants' motion in limine to preclude the testimony of Janet Gold, Esq., will be granted.

Christopher v. First Mut. Corp., 2008 U.S. Dist. LEXIS 32781  (E.D. Pa. April 22, 2008).  As defendants counsel made clear to Plaintiff's counsel during his review of documents at the office of Defendants' counsel, by providing documents in the interest of moving discovery forward, Defendants did not waive any privilege or defense, or agree to the admissibility, of any document provided.  The privileged nature of these communications provide an additional basis for their exclusion at trial and Defendants respectfully request that the Court so rule.

## I.      <u>Denial of work hours in Special Investigations Unit</u>

At page nine of his pretrial memorandum, Plaintiff again makes reference to "multiple work hour requests" to Chief Vance and Lieutenant Bernstiel. This is an attempt to influence the jury to find for plaintiff on an improper basis, as the Magistrate Judge has already ruled that Plaintiff has only presented evidence sufficient to meet his burden regarding termination, specifically addressing Plaintiff's unsupported allegations regarding his hours:

> Plaintiff's brief clarifies the scope of his activities allegedly protected by Title VII: (1) filing a charge of employment discrimination, which occurred in May 2008; (2) cooperating in the investigation of the charge by the PHRC, which took place after the charge was filed; and (3) opposing employment discrimination by making a complaint to his employer, which occurred in Mayor June 2008. (PI's Resp. 44.) Plaintiffs brief also clarifies the adverse actions he alleges to have suffered. Specifically, Plaintiff contends that in addition to his termination, he suffered adverse actions in retaliation for said protected activities that included his forced transfer from NET, which occurred in April 2008 and the <u>denial of a start time change by Chief Vance and Lieutenant Bernstiel, the timing of which is unclear from Plaintiffs citations to the record on this point.</u> (pl.'s Resp. 44-45; see Doc. 115, at 6.) <u>As noted above, to be considered retaliatory, the adverse action alleged must be contemporaneous with or subsequent to a plaintiffs protected activity. Only Plaintiffs termination meets this criterion. Therefore, the Court's analysis of Plaintiffs claim for retaliation pursuant to Title VII is limited to t</u>he Defendant's allegedly retaliatory termination of Plaintiff.

(Docket #127, Memorandum and Order of Judge Restreppo at FN 21)(emphasis added)

The Court also addresses Plaintiff's failure to adduce any admissible evidence in support of a retaliation claim beyond his termination:

> To the extent that Plaintiffs Complaint makes additional allegations of discrimination, <u>Plaintiff has not provided any factual or legal support for these allegations</u> in his response to Defendants' motion. Instead, Plaintiff's response focuses on Defendant's actions related to Plaintiffs termination and its administration of Plaintiffs Heart and Lung Act claim. In addition, as Plaintiff notes in his Complaint, many of the alleged actions of discrimination lie outside the statute of limitations. Accordingly, <u>the Court construes Plaintiffs response to indicate that Plaintiff is pursuing only those</u>

<u>discrimination claims addressed above [re: Heart & Lung, a claim
not before the jury].</u>

<u>Id</u>. at fn 19 (emphasis added).  Plaintiff attempts to re-insert these claims in his case at

page nine, claiming that denial of a different schedule was racially discriminatory as he had

seniority over "all White Males" in his new assignment.  As there is no such claim before the

jury regarding racial discrimination in work hours, and plaintiff concedes that this claim is

related only to Heart & Lung ("The denial…forced Roberts to use approximately 43.5 hours of

Leave Time (which still has not been paid by the County)" Plaintiff's Memorandum at 9),any

such evidence or testimony would be both not relevant under Rules 401-02 and overly

prejudicial under Rule 403, as it could lead the jury to decide an existing claim on an improper

basis.  Defendants request that the Court so rule.

**J.**     <u>**Alleged conversations with PHRC Intake Supervisor Xu, and Officer
Jamison**</u>

At page 10 of his pretrial memorandum, Plaintiff makes extensive reference to "Intake

Supervisor Xu," "Intake Officer Carole Leak Jamison"  and hearsay statements from Xu and

Jamison to which Plaintiff himself is the only apparent witness. [6]   All such statements are

violative of F.R.E. 802, as none meet any of the exceptions of F.R.E. 803.  Specifically, Plaintiff

should be precluded from testifying as to any statements made by Xu and/or Jamison.

**K.**     <u>**Plaintiff's Exhibit and Witness Lists**</u>

Defendants are mindful of the Court's January 24, 2012 Scheduling Order directing that

the parties seek to resolve objections to their respective exhibit and witness lists, prior to the

February 21, 2012 pretrial conference.  To this end, Defendants have sent to Plaintiff's counsel,

---

[6] Among the hearsay statements in Plaintiff's memorandum are alleged statements that Xu instructed Roberts not to turn over copies of his photographs, not to file an EEO Complaint with the County, that it was likely the County would retaliate against Roberts, to serve the EEO and PHRC Complaints on the County at the same time and that Xu would contact him when the PHRC was to serve the Complaint upon the County. He claims further that he was contacted by "Intake Officer Carole Leak Jamison" an individual never identified during discovery, and told when the PHRC Complaint would be served on the County.

correspondence of January 30, 2012 seeking a properly arranged and tabbed exhibit binder from

Plaintiff's counsel consistent with the Court's January 23rd order (Docket No. 184) and

correspondence listing Defendants' objections to Plaintiff's exhibit and witness lists. [7] These

objections are provided here, verbatim, from the February 3, 2012 correspondence to Plaintiff's

counsel.  Should counsel be unable to reconcile their positions, Defendants seek an Order

precluding the following exhibits and witnesses for the reasons enumerated in that

correspondence, and in the arguments in this Motion:

1.      Defendants' Objections to Plaintiff's Exhibits:

#3 – As stated previously, this exhibit is mis-identified in your memorandum.  We have no objection to the performance evaluations themselves, but object to their mis-identification.

#4 – Defendants object to the combination of exhibits in this fashion.  Should the jury ask for the exhibit, it would be improper to send out multiple exhibits in this manner.

#5 – This exhibit has no relevance to the remaining claims as it is relevant only to Heart & Lung.

#6 -  This exhibit has no relevance to the remaining claims as it is relevant only to Heart & Lung.

#7 – This exhibit has never been authenticated and requires expert testimony for support. As you have identified no experts, it should be precluded.

#9 through #18, inclusive – These exhibits have no relevance to the remaining claims as they are relevant only to Heart & Lung.  Further, #14 includes a combination of exhibits.

#24- Defendants object to the combination of exhibits in this fashion.  Should the jury ask for the exhibit, it would be improper to send out multiple exhibits in this manner.

#26 – This exhibit is mis-identified as to its recipient or writer

#32 – This exhibit improperly combines photographs from different sources that would easily mislead the jury.

#37 – Defendants object to the combination of exhibits in this manner. Further, the second exhibit, an attorney entry of appearance, is needlessly cumulative.

---

[7] A copy of Plaintiff's Pretrial Memorandum is attached hereto as Exhibit "D"

#38 – These documents are impermissible hearsay, offered for the truth of the matters contained therein.

#40 – Defendants object to the combination of exhibits in this manner.  Further, the declaration attached as part of this exhibit is one subject of Defendants' Motion in Limine.

#42 – This exhibit is of no relevance to the instant matter.

#43 – This exhibit is mis-identified, and of no relevance to the instant matter.

#44 - Defendants object to the combination of exhibits in this manner.  Further, the exhibits are of no relevance to the instant matter, and the emails attached are unrelated to the other exhibits.

#47 – Defendants object to the characterization of this exhibit as the PHRC Complaint refers to Plaintiff's termination.  Further, the newspaper articles attached are impermissible hearsay.

#50 – This exhibit is mis-identified and does not depict former Detective Fasold's performance.

#51 - This exhibit is of no relevance to the instant matter.

#55- Defendants object to the combination of exhibits in this manner.  Further, the exhibits were never authenticated,  are of no relevance to the instant matter, contain an exhibit never produced in discovery (Deputy Administrator) and amount to impermissible hearsay.

#58 – The exhibit you have attached is not a video, merely an unrelated email.  The video Defendants believe you are referring to is one subject of Defendants' Motion in limine.  If you are referring to a different video, it was never produced.  The video shot by Mr. Caldwell which was produced during discovery is of no relevance to the instant matter, is more prejudicial than probative and contains impermissible hearsay.

#60 and 61 – These exhibits are of no relevance to the instant matter.

#62 – Defendants object to your mischaracterization of these documents as an "admission", and to your combination of exhibits in this manner.  Further, the "issue letter" is not the document referred to in Attorney Santarone's correspondence.

#63 – This exhibit has never been authenticated, amounts to hearsay, and is of no relevance to the remaining claims in this matter.  Further, a page is clearly missing.

#64 -  These exhibits are of no relevance to the instant matter and if determined to be relevant by the Court, are more prejudicial than probative.

#65 and 66- These exhibits consist of impermissible hearsay offered for the truth of the matter contained therein, have never been authenticated, and are more prejudicial than probative.

27

#67 – Defendants object to the combination of exhibits in this manner.

#71 – This exhibit is mis-identified.  It appears to be some type of expert report.  As you have identified no experts in this matter, it is objectionable on this basis, as to its relevance, and amounting to impermissible hearsay.

#72 – This exhibit is mis-identified.  Further, these exhibits have no relevance to the remaining claims as they are relevant only to Heart & Lung.  Finally, #72 includes a combination of exhibits to which Defendants object.

#72 – This exhibit is of no relevance to the instant matter, and amounts to impermissible hearsay offered for the truth of the matter contained therein

#75 – This exhibit is mischaracterized as emails.

#78 – Defendants object to the combination of exhibits in this fashion.  Should the jury ask for the exhibit, it would be improper to send out multiple exhibits in this manner.

#79 – Defendants object to these "declarations" each of which is the subject of Defendants' Motion in Limine

#81 – Defendants object to this exhibit as one subject of their Motion in Limine

#82 – There is no actual exhibit attached.  To the extent that you are attempting to present "psychological records" as an expert report, you have never identified an expert in this matter.

2.    Defendants' Objections to Plaintiff's Witness List

#2 – Steven Latzer does not have information relevant to any of Plaintiff's remaining claims

#4 – Captain Richet is the subject of Defendants' Motion in Limine

#5 – "Daren Collins" was never identified by Plaintiff in this matter and would have no information of relevance to Plaintiff's remaining claims.

#6 – Mr. Caldwell is the subject of Defendants' Motion in Limine

#7 – Mr. Burkhardt is relevant only to Heart and Lung. To the extent the Court determines his testimony is relevant to mold in the workplace, it is unnecessarily cumulative

#8 – Chief Sadler is the subject of Defendants' Motion in Limine

#10, 13, 14, 15, 18, 22, 24, 25& 28 – These witnesses are relevant only to Heart & Lung.

#16 – Mr. Poplar is the subject of Defendants' Motion in Limine, and has information only of relevance to Heart & Lung.

#17 – Ms. Gibbons testimony would consist almost entirely of hearsay, or invoke her right not to reveal sources.  It is needlessly cumulative and/or of no relevance to remaining claims.

#26 – The Court has already ruled that neither you nor Attorney Santarone will be called as witnesses.

#29 through #35, inclusive – These witnesses have no relevance to the remaining claims and are called to present impermissible character evidence.

WHEREFORE, Defendants  respectfully requests this Honorable Court grant their

Motion in Limine and enter the Order attached hereto.


MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN


BY:     s/John P. Gonzales
        JOHN P. GONZALES, ESQUIRE
        ID#  PA71265
        1845 Walnut Street
        Philadelphia, PA 19103
        (215) 575.2871
        Email:  jpgonzales@mdwcg.com
        Attorney for Defendants


DATE:  2/3/12
26/1848846.v1

29

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

REGINALD ROBERTS                            :   Civil Action No: 09-4895
                                            :
      v.                                     :
                                            :
RISA VETRI FERMAN, MONTGOMERY COUNTY,       :
OSCAR VANCE, JR., SAMUEL GALLEN AND         :
STEPHEN FORZATO                             :

## <u>CERTIFICATE OF SERVICE</u>

     I, JOHN P. GONZALES, ESQUIRE, do hereby certify that a true and correct copy of

Defendants' Motion in Limine to Preclude Trial Testimony, was electronically filed with the

Court on February 3, 2012 and is available for viewing and downloading from the ECF System.

All counsel of record was served via electronic notification.


                  MARSHALL, DENNEHEY, WARNER,
                  COLEMAN & GOGGIN


BY:    <u>s/John P. Gonzales</u>
        JOHN P. GONZALES, ESQUIRE
        ID#  PA71265
        1845 Walnut Street
        Philadelphia, PA 19103
        (215) 575.2871
        Email:  jpgonzales@mdwcg.com
        Attorney for Defendants

26/1848846.v1